## Johnson, et al. v. York Coal & Coke Company, et al.

(Decided December 3, 1918.)

### Appeal from Boyd Circuit Court.

1. Corporations—Directors and Stockholders.—At common law a director of a private corporation need not be a stockholder therein, but where the statute under which the corporation is organized or a legally enacted by-law requires the director to be a stockholder, and that he shall cease to be a director when he ceases to be a stockholder, the director will ipso facto vacate his office by a sale of his stock and the certificate representing it without such certificate being recorded on the corporate registry, and such vacancy may then be filled by the mode provided in the statute or the legally enacted by-law without notice to the selling stockholder.

2. Corporations—Vacancies in Board of Directors—How Filled.—When a statute authorizes a corporation to fix in the by-laws what shall constitute a quorum of the board of directors, it is competent for the corporation to adopt a by-law to the effect that when a vacancy occurs in the board between meetings of stockholders, the remaining members of the board may fill such vacancy, although such remaining members be less than a majority of the entire membership of the board.

3. Corporations—Vacancies in Board of Directors—How Filled.—Where a corporation had seven directors and four of them sold and transferred their stock, but the transferee did not register his transfer on the books of the company, the by-laws providing that in case of a vacancy between meetings of the stockholders the remaining members of the board should fill the vacancies. Held that upon the sale of the stock by the four directors their offices became vacant, and it was lawful for the three remaining directors to fill such vacancy where the conditions set forth in subdivisions 1 and 2 existed.

4. Corporations—Transfer of Stock—Pleading.—A pleading is to be construed most strongly against the pleader, and where the transferee of stock in an effort to qualify his transferor for director in the corporation alleges that by agreement such transferor was permitted to hold a certain number of shares in the corpora-

tion for the purpose of qualifying him as director, such allega-
tion will be deemed insufficient in the absence of a showing as
to how the trustee was vested with the stock, or whether it was
done before the remaining directors filled the vacancy created
by the sale of the stock.

EDWARD C. O'REAR for appellants.

CHARLES FILLIUS and P. K. MALIN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit is a controversy over the directorate of the
appellee and defendant below, York Coal & Coke Com-
pany, which is a corporation organized on October 27,
1911, under the laws of West Virginia, and having an
authorized capital stock of $250,000.00, divided into 250
shares of the par value of $100.00 each. The corporation,
as it had the right to do under a statute of West Vir-
ginia, enacted a by-law fixing the number of directors
at seven, and at a stockholders' meeting the next day
after the organization of the corporation Charles B.
Loveless, David L. Helman, E. F. Pierce, J. C. C. Mayo,
C. B. Slemp, J. M. York and the appellant and plaintiff
below, J. R. Johnson, Jr., were elected directors for the
corporation who, under the by-laws, were to hold their
offices until their successors were elected and qualified.
The by-laws also provided that there should be an annual
meeting of the stockholders in which directors should be
elected. However, there was never but one meeting of the
stockholders or of the directors (except as herein-
after stated), and those meetings were held directly after
the company was incorporated. The board of directors,
composed of the individuals mentioned, organized by
electing J. M. York president, E. F. Pierce vice president,
J. R. Johnson, Jr., secretary, and C. B. Slemp treasurer.
At the time of the organization of the corporation only
1,000 shares of stock were issued, which were divided
in different proportions among those who were elected
directors and the Harold Coal Company, who constituted
the entire number of stockholders in the beginning, and
their names appeared as such on the stock registry book
of the corporation.

On June 10, 1912, J. M. York sold and transferred
his shares of stock to J. C. C. Mayo, and delivered to the
transferee the assigned certificate representing his stock.

On July 1, 1912, plaintiff Johnson sold and transferred all of his shares of stock to C. B. Loveless and delivered to the latter the transferred certificate representing all of the stock which the transferor owned. Prior to May, 1913, Mayo, Slemp and the Harold Coal Company sold and transferred their stock and assigned the certificates representing all of their stock to the Elkhorn Fuel Company (afterwards changed to Elkhorn Coal Corporation), but none of the stock so transferred was registered upon the books of the corporation, it continuing to appear upon the corporation registry in the names of the transferors. After these sales only three of the directors continued to be actual and beneficial stockholders, viz.: C. B. Loveless, D. L. Helman and E. F. Pierce, who owned in the aggregate 500 shares of the issued stock, while the Elkhorn Coal Corporation held the other 500 shares.

Pursuant to a call made by the vice president, Pierce, the three directors who had not parted with their stock met on the 26th day of June, 1913, and proceeded to fill the vacancies in the directorate which they insisted occurred upon the other four selling and transferring their stock and thereby ceasing to be stockholders. At that meeting the appellees and defendants below, D. A. Geiger, Charles Fillius, L. L. Jones and C. K. Helman, were elected as directors, and this board proceeded to fill the offices of the corporation, and as thus constituted they took charge of the corporate books and its affairs and were endeavoring to proceed with its business when the plaintiff Johnson as stockholder, director and secretary, filed this suit in his own behalf and for the use and benefit of the other three former selling stockholders, and all others not in harmony with the proceedings of the meeting on June 26, 1913, against the three remaining original directors and the four new ones, as well as the newly elected officers, seeking to enjoin the defendants from taking charge of the books of the company or in any wise administering its affairs, upon the ground that there was no authority for the meeting of June 26, 1913, and that its proceedings were null and void, inasmuch as it was insisted by plaintiff that he and his three associates who had sold their stock were still directors and officers. This insistence was based upon the ground (1) that he and his associates had never ceased to be stockholders so far as the corporation was concerned, since upon its reg-

ister their names still appeared as stockholders, and (2) that no notice was given to them of the meeting of June 26, 1913.

An answer was filed, the first paragraph of which was a traverse of the allegations of the petition, and the second paragraph alleged the facts with reference to the selling of their stock by the plaintiff and his associates as above recited, and pleaded a statute of West Virginia pertaining to the organization, conduct and management of corporations organized under the laws of that state, and also pleaded the by-laws of the York Coal & Coke Company in so far as applicable to the questions presented. Before the final submission of the cause the Elkhorn Coal Corporation filed a petition to be made a party, which, however, was not verified, but which it asked to be taken as its answer. This pleading was permitted to be filed over the objections of the individual defendants, but their demurrer filed thereto was sustained. A demurrer filed by the plaintiff Johnson to the second paragraph of the answer filed by the individual defendants was overruled, and all parties declining to plead further, the petition was dismissed, and complaining of that judgment this appeal is prosecuted.

It will be seen that the first and chief question to be determined is what effect, if any, did the sale of the stock by the four retired and complaining directors have upon their respective offices when they continued to appear as stockholders upon the books of the corporation, Defendants contend, and the court so held, that such offices became *ipso facto* vacant upon the sale of the stock, while plaintiff contends (a) that whatever the law might be as to the requirement that a director should be a stockholder, he and his associates were eligible as directors so long as they appeared to be stockholders upon the corporate registry, notwithstanding the fact that they may have parted with every farthing of beneficial interest in the stock; and (b) that if he should be mistaken in this he and his associates did not *ipso facto* vacate their offices by the sale of the stock, but this fact only furnished authority for the directors in meeting to declare such offices vacant, and that he and his associates were entitled to notice of such meeting, which he claims they did not receive. There are some further contentions made by the appellant and intervening defendant, Elkhorn Coal Corporation, which will be considered later.

Counsel for appellants in his brief refers to a number of textbook authorities and cases from this and other jurisdictions upon the general doctrine of the qualifications for directors in a private corporation, but we do not feel called upon to refer to or to undertake an analysis of them, since we are convinced that the contentions here made must be settled in accordance with, as they are governed by, the laws of West Virginia, under which the corporation was organized, and the by-laws which it enacted pursuant to authority conferred thereby. However, it might be appropriate at this point to say that at common law a director of a private corporation need not be a stockholder therein, since a director is but an agent of the corporation, and it is competent, unless forbidden by statute or a legal by-law, for it to select or choose whomsoever it pleases to act as its agent. It has been held in some jurisdictions, however, and particularly in Illinois, that upon grounds of public policy a director in a railroad corporation (without statutory or by-law requirement) should be a stockholder in the company. While we do not find the reason for taking this class of corporations out of the common law rule, we imagine it is found in the fact that such corporations are *quasi* public ones, and that the public's interest in their efficient operation would be better guaranteed if the directors owned stock therein. It is furthermore recognized by all the authorities that this subject is preeminently one for the regulation by each state, under the laws of which the corporation is organized, and that it is furthermore competent for such laws to confer authority upon the corporation to prescribe by duly enacted by-laws additional or other qualifications than those prescribed by statute. These general principles of the law existing almost if not entirely without exception will be found stated in 10 Cyc., pages 737-738; Thompson on Corporations, vol. 1, secs. 916, 917, 918, and Cook on Corporations, vol. 2, sec. 623. As showing the general law upon the subject only brief illustrative excerpts from the work by Mr. Thompson will be made. In section 917, quoting from Elliott on Corporations, sec. 498, it is said:

"A director is merely an agent, and any person who has capacity to contract may be a director of a corporation. No special qualifications are necessary unless required by the charter or by-laws. A director need not

be a shareholder unless required to be such by the charter, or, as is commonly the case, by statute. Where a director is required to be a shareholder, it is sufficient if the shares stand in his name on the books of the corporation. But it has been held that when a director is required to be .a stockholder, he must be the beneficial owner, and that the mere fact that shares are registered in his name is not sufficient. A by-law which provides that a director shall cease to be such when he ceases to be a proprietor of shares, by implication, renders one who is not the proprietor of shares ineligible to the office of director. A *bona fide* owner of shares is eligible, although they have not been transferred to him on the books.''

In section 918, showing the powers of the corporation through duly enacted by-laws to prescribe the qualification for directors, it is said:

''A corporation may prescribe by by-laws the qualifications of its directors as well as other officers, but such by-laws must not be inconsistent with the charter or general statute. If the general laws or charter require that the directors shall be stockholders, this qualification can not be dispensed with by a by-law.''

With these general principles in mind, we will now examine the West Virginia statute in force at the time of the organization of the York Coal & Coke Company and the by-laws of that corporation enacted pursuant thereto. Section 2881 of the West Virginia Code, which is a part of the chapter of the statutes pertaining to corporations, says:

''For every corporation subject to this chapter there shall be a board of directors who shall have power to do, or cause to be done, all things that are proper to be done by the corporation. The stockholders may in general meeting, by a by-law, prescribe the number of which the board shall consist; but unless a different number be so prescribed there shall be five directors. They may also, by a by-law, prescribe the qualifications of directors; but if it be not otherwise provided, every director must be a resident of this state and a stockholder. The directors shall be elected at the annual meeting of the stockholders, or as soon thereafter as practicable, and shall hold their offices until their successors are elected and qualified. The stockholders in general meeting may

remove any director and fill the vacancy; but any vacancy not caused by such removal *may be filled by the board.* A majority of the board shall constitute a quorum, *unless it be otherwise provided in the by-laws;* and if the number of the board be reduced at any time so as to interrupt the proper and efficient management of the business of the corporation, a general meeting of the stockholders may be called to elect new directors, or to take such order in the premises as they may deem proper.''

Section 2 of article 6 of the by-laws is in these words:

''The only qualification required of a director shall be that he or she be a stockholder of this company. When one ceases to be a stockholder his office as director *shall become vacant.*''

Section 3 of the same article contains these provisions: ''The directors shall hold their offices until the next annual meeting of the stockholders, or until their successors shall be elected and qualified, unless sooner removed in the manner herein provided *or their offices become vacant by their ceasing to be stockholders. . . .* When a director is removed or his office becomes vacant, the stockholders in general meeting may fill the vacancy. The board of directors *remaining in office,* or a majority of them, may fill such vacancy until the next general or annual meeting of the stockholders, or until successors shall be elected and qualified.''

Section 1 of article 10 provides in substance that the president shall be a member of the board of directors and that he shall continue to hold his office until his successor is qualified, unless he ceases in the meantime to be a member of the board. Another by-law prescribed the number of directors to be seven, which was lawful for the company to enact under the provisions of the section of the West Virginia statute, *supra.* That statute authorized the corporation by the enactment of a by-law to prescribe the qualifications of directors, which, until done, they should be stockholders of the corporation and residents of the state. The by-law contained the same requirement as to stockholders with the addition that ''when one ceases to be a stockholder his office as director *shall become vacant;*'' and in another place, a by-law says that ''their offices (directors) shall become vacant by their *ceasing to be stockholders.*'' By the same statute it is provided that a majority of the board shall

constitute a quorum, "unless it be otherwise provided in the by-laws." They, as we have seen, provided that a majority of the directors should constitute a quorum, except in cases of vacancies in the board between the times fixed for a meeting of stockholders, in which case "the board of directors *remaining in office,* or a majority of them, shall fill such vacancy until the next general or annual meeting of the stockholders," &c.

The by-laws, then, seem to have been enacted in strict compliance with the statute under which the corporation was organized, and which authority it was competent for the statute to confer upon the corporation.

It then becomes necessary to determine the scope and effect of that clause in the by-laws reading: "When one ceases to be a stockholder, his office as a director *shall become vacant.*" It would seem that this language is so plain as not to invite confusion. While it does not use the term "*ipso facto,*" it does say that the office "shall become vacant," and the occasion when such a consequence shall follow is "when one ceases to be a stockholder." We do not think that any clearer meaning could have been conveyed by incorporating the term "*ipso facto*" so as to make the by-law read "shall *ipso facto* become vacant," instead of the way it does read.

It is insisted that conceding all that has been said to be true, the character of stockholder referred to in the West Virginia statute and in the by-laws is a registered stockholder and not an actual beneficial one not so registered. This, however, under the facts of this case, is not in accord with the weight of the law upon the subject, and is counter to most respectable authority as well as in conflict with the evident intent and purpose of the by-law.

In the volume of Cyc., *supra,* on page 738, it is said: "A by-law providing that any person chosen as a director shall cease to be such when he ceases to be a proprietor renders by reasonable implication any one who is not a proprietor ineligible to the office of director." And again, "Where the statute requires that the members of the board must be stockholders of at least a given number of shares, a director who assigns all his shares to another *ipso facto* divests himself of his title to the office."

To the same effect is Cook on Corporations, sec. 623; Thompson on Corporations, sec. 917. The text is sustained, also, by the following cases: Sinclair v. Fuller, 108 N. Y., 607; Chemical National Bank v. Caldwell, 132 N. Y. 250, and Wright, Receiver v. National Bank, et al., 52 N. J., E. 392. In the latter case the state of New Jersey had a statute in part reading: "When any person a director of any body corporate shall cease to be a *bona fide* holder of some of the stock thereof, he shall cease thereupon to be a director thereof;" and it was held that a parting with the title to the stock disqualified a director and *ipso facto* vacated his office. Any other interpretation would not only defeat the purpose of the enactment of the by-law or statute, but would pervert the language thereof to the effect that "the office shall become vacant."

What we have said also disposes of the contention that the three directors composing the meeting at the time the vacancies were filled did not constitute a quorum of the board, since we have found that under the by-laws "the remaining directors" might fill such vacancies. It also disposes of the other contention that the selling directors did not have notice of the complained of meeting.

It is alleged and not denied that a notice was given to them "on the ——— day of June, 1913, and in ample time for them to attend," but it is insisted that this pleading is an insufficient allegation of notice; but be that as it may, if plaintiff and his associates were no longer directors because of having vacated their offices by a sale of their stock, which we have determined they did, then they were not entitled to notice, since they were then out, and no longer members of the board. Neither could the sale of the stock be construed, as is contended, to be only a fact disqualifying the directors but permitting them to remain as such until appropriate action taken by the corporation declaring the offices vacant. This interpretation would permit the plaintiff and his associates to remain as directors until the board had acted declaring their offices vacant. In that case they would still be members of the board until the vote was taken on the question of vacancy, and we would have the anomalous situation of their sitting in their own case and passing upon their own qualifications, which is not only repugnant to law, but likewise offensive to all principles of right and justice.

The remaining question is that arising upon the pleading of the Elkhorn Coal Corporation. In the first place, as we have seen, that pleading is not verified, and it was filed over the objections and exceptions of the individual defendants. We are not prepared to say, however, that this fact eliminates it from the case, or prevents our considering it. It does not deny the transfer to the pleader of the 500 shares of stock owned by the former directors. On the contrary, that fact, by a failure to deny it, is admitted. It is stated in that pleading that Mayo, Slemp and York, by agreement, were permitted "to hold the remaining 50 shares of stock in the defendant York Coal & Coke Company for the purpose of qualifying them as directors of the said defendant company." It is not stated *how* the three were permitted by agreement to hold the 50 shares mentioned; i. e., whether there was any transfer of the stock to them, or even a delivery of any certificate of stock to them. The pleading at most can only be construed as saying that *it was agreed* that 50 shares of stock should be placed in the names of those three persons in such manner and form as that they would be trustees thereof and be qualified to serve as directors. It is nowhere shown, however, that this was done. Furthermore, if the language had been sufficient for the purpose intended, it is not shown when that agreement was made, or when the stock was retransferred or attempted to be retransferred if at all to the three trustees, and for aught that appears it was done if at all after the meeting of June 26, 1913, at which the vacancies were filled. Since pleadings must be taken most strongly against the pleader, we are forced to conclude that the petition of the corporation appellant was insufficient, and the demurrer thereto was properly sustained.

There is yet another reason why that pleading is insufficient, it being that conceding that one holding stock under a naked trust is qualified for the office of director under a requirement that a director should be a stockholder, he is not so qualified if the stock was put in his name colorably only, and with a view to qualify him as director in furtherance of some dishonest or fraudulent scheme touching the management or control of the company. 10 Cyc., 739, 7 R. C. L. 424-425; Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky., 131, and authorities, *supra.*

It is pleaded in this case in the answer, and not denied, that the Fuel Coal Corporation had pledged the 500 shares of stock which it purchased from the former directors with a trustee corporation in New York, and had agreed with it in the pledged contract to control and manage the stock so pledged in a way that would be detrimental, harmful and hindering to the York Coal & Coke Company to such an extent as to make the Fuel Coal Corporation guilty of a fraudulent scheme to wrongfully control the management of the York Coal & Coke Company.

We deem it unnecessary to unduly lengthen this opinion by setting out the agreements made by the Fuel Coal Corporation with its pledgee, which we have determined constituted a fraudulent purpose on its part with reference to the management and control of the York Coal & Coke Company, but content ourselves with saying that there can be no doubt as to the effect of those agreements. It is insisted, however, in attempting to meet this feature of the case, that there is no fraudulent purpose on the part of the Fuel Coal Corporation pleaded by the individual defendants. Nevertheless, the fact appears in the answer of those defendants, and is not denied by the Fuel Coal Corporation, and must be admitted as true for the purpose of this case.

We therefore conclude that upon the whole case the judgment appealed from was proper, and it is affirmed.