## Kaye et al. v. Kentucky Public Elevator Co. et al.

Nov. 5, 1943.

J. Verser Conner for appellants.

Woodward, Dawson & Hobson, Dodd & Dodd and Edward P. Humphrey for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Minority stockholders of a corporation have sought a declaration of rights favorable to their interests and injunctive relief against action of the majority stockholders deemed to be detrimental. They appeal from an adverse judgment rendered on the allegations of their petition to which the court sustained a demurrer. The statement of the case, therefore, is as it is therein alleged.

The Kentucky Public Elevator Company has 2000 shares of common and 3500 shares of 5% cumulative preferred stock. The par value of each class is $100. Under its charter the preferred stockholders have the same voting powers as common stockholders in the event of nonpayment of two semi-annual dividends, which condition exists. Upon dissolution of the corporation they are entitled to receive unpaid accumulated dividends and the payment of their stock before anything may be distributed to the common stockholders. The appellants, Lewis G. Kaye and three others, own 575 shares of the common stock. Several railroad companies operating in Louisville own all of the preferred and much of the common stock.

The appellants, Kaye and Marshall, resigned as directors in protest of the actions involved in the suit. It is alleged that there remained only two bona fide directors, Dixon and Smith, who personally own five shares each; that the other three, who are officers of the railroad companies, are disqualified from acting as directors as they do not in fact own any stock in the corporation, their stock having been transferred to them only for the purpose of qualification and with the power of attorney for re-transfer appearing on the certificates simultaneously endorsed in blank and immediately delivered to the railroad companies. It is charged, therefore, that there are only two genuine directors and not a quorum of eligible directors for the transaction of business.

The corporation owns a grain elevator in Louisville which it has leased for several years to Early & Daniel Company, a corporation, which furnished the railroad companies much profitable business. It is charged the leasing contract was dictated by the railroad companies and its terms were favorable to the lessee and unfavorable to the lessor, the Elevator Company, which has not been operated at a profit. In June, 1943, the railroad companies, particularly the Louisville & Nashville Railroad Company, entered into negotiations with Early & Daniel Company to sell it all of the Elevator Company's property for $341,025.59, ''thus favoring and retaining the possession of a valued shipper and customer'' of all the railroad companies. Another prospective purchaser of the property ''approached the Louisville & Nashville Railroad Company with an offer to purchase said property for cash and at a price substantially in excess of that offered by Early & Daniel Company.'' It was declined upon the ground that the other offer had been accepted, subject only to the details necessary to conclude the transaction, although in fact there had been no legal acceptance. Other stockholders had never been consulted or given an opportunity to vote or to obtain a more favorable offer. An amended petition states that three days after the filing of this suit and service of process upon several of the defendants, the ''purported'' directors had adopted a resolution accepting the offer of Early & Daniel Company and directing the officers of the corporation to execute the necessary contract and conveyance and that such a contract had been only then formally entered into. It is pleaded: ''The purported purchase price of said property is insufficient for the payment of the debts of said corporation and of the sums due the preferred stockholders thereof and if consummated these plaintiffs and other common stockholders of said corporation will receive nothing for their stock interest. Said corporation has no other assets except cash and accounts receivable which are insufficient to pay all corporate debts.''

Following charges as to what the defendants purposed doing to complete the sale, it is alleged: ''Such action is not for the best interests of plaintiffs or other common stockholders of the Elevator Company, but is wholly destructive of their interests. If said property is offered for sale to the highest bidder or if the fact that same is for sale is made known and some person or per-

sons are authorized to make a sale of said property, whose sole interest is to sell same for the highest and best price obtainable, and whose efforts are not controlled by consideration of the traffic to be obtained for the railroads from the purchaser of said property or by consideration of the necessity for favoring said purchaser because of profitable business relations, past and prospective, between said Railroad and Railway Companies and said purchaser, then a higher and more favorable price for said property can be obtained."

The majority of stockholders "without consultation with or the approval of the common stockholders" had consented, in writing, that the corporation be dissolved. It is alleged that it has been dissolved "except as same is continued in existence by law for the purpose of winding up its affairs."

The plaintiffs prayed for a declaratory judgment to the effect that the owners of the preferred stock, by reason of their domination of the affairs of the corporation and their actions as summarized above, and the absence of a quorum of eligible directors, occupy a fiduciary relationship to the corporation and its common stockholders, and have violated their fiducial obligations. It is asked that they be enjoined from acting as trustees in the liquidation of the company; that the sale and transfer of its property to Early & Daniel Company be enjoined, and that a receiver be named by the court to take possession of the property and make a fair sale thereof.

The foregoing is a close abridgment of what we regard as the allegations of the petition material to the decision and of the relief sought. An answer and reply had been filed before the court passed on the demurrer to the petition, but they have been disregarded.

Several interesting legal questions relating to corporate management and dissolution are discussed in the briefs, but it does not seem necessary to treat them here.

The Kentucky Statutes require that a director of a corporation "shall own in his own right not less than three shares of its capital stock." KRS 271.230. The predecessor of this statute, Section 551, Kentucky Statutes, was construed as permitting a fiduciary, a personal representative of a deceased stockholder, to serve as a director. Schmidt v. Mitchell, 101 Ky. 570, 41 S. W. 929, 72 Am. St. Rep. 427. Since a corporation itself cannot

act as a director in another in which it owns stock, a person legally authorized to represent the former corporation and vote its stock may so act. 1.9 C. J. S., Corporations, Section 726a. The general rule is that a director may hold his stock as a trustee, or have only the legal title thereto, even for the express and sole purpose of making him eligible unless the situation was brought about in furtherance of a dishonest or fraudulent scheme concerning the management or control of the company. Fletcher on Private Corporations, Vol. 2, page 30; 19 C. J. S., Corporations, Section 726c (2); Johnson v. York Coal & Coke Company, 182 Ky. 303, 206 S. W. 611. It is. inferable from the petition in this case that the situation described had existed for a long time and there is no claim that it was created or continued for a dishonest or improper purpose. The only action of the directors brought into the case is that they accepted and were about to consummate the execution of the sale of the property which had been made by the controlling stockholders.

Minority stockholders do not have many rights as against the action of the majority, but whatever they have should be protected. There is no doubt that holders of a majority of the stock in a corporation in selling all its property and dissolving it owe the duty of exercising diligence and good faith to the minority to obtain the largest amount possible and to protect their interests. 13 Am. Jur., Corporations, Sections 423, 1002. In such matters the majority stockholders and the directors will not be permitted to further their own selfish interests to the detriment of the minority. This is well expressed in Southern Pacific Company v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 535, 63 L. Ed. 1099, as follows: "The rule of corporation law and of equity invoked is well settled and has been often applied. The majority has the right to control; but when it does so, it occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors. If through that control a sale of the corporate property is made and the property acquired by the majority, the minority may not be excluded from a fair participation in the fruits of the sale."

See also Ashman v. Miller, 101 F. (2d) 85, in which Judge Hamilton of the Sixth Circuit treats the subject at length, and Enterprise Foundry & Machine Works v.

Miners' Elkhorn Coal Company, 241 Ky. 779, 45 S. W. (2d) 470.

Conceding arguendo that the sale of the corporation's property for $341,025.59 was made to favor a valued shipper and customer of the majority stockholders and that it was made "because of profitable business relations," as alleged, may be deemed a breach of fiducial obligation, we do not think the plaintiff showed a right to the relief prayed. There is no allegation that the price is less than the true or real value of the property. It is stated that it is not sufficient to pay the debts of the corporation and the obligations to the preferred stockholders, the amounts of which are not disclosed. However, the contract with Early & Daniel, filed as an exhibit, reveals a mortgage debt of $125,000, and it is pleaded that the preferred stockholders are entitled to receive the par value of their stock, namely, $350,000. It is inferable that there is a large accumulation of unpaid dividends which must also be paid, but the amount is not disclosed except that it is stated no dividends have been paid for two years. Thus, the petition quite definitely discloses that at least $510,000 would have to be paid before the common stockholders could receive anything.

We may agree with appellants' contention that because of the peculiar fiduciary relationship and a presumption against good faith raised as described it was not necessary that they should have alleged or assumed the burden of proving that a sale by disinterested fiduciaries or by a receiver of the court would yield a sum sufficient to pay all of the corporation's obligations and the common stockholders something for their holdings, or that they should definitely disclose an actual damage or injury to themselves by the contemplated sale of all of the corporation's property, or establish as an actual fact that the property would bring a definite sum. Such allegations and proof would of necessity have to be made and based upon estimates and appraisals, which are often speculative. But it seems to us that it was necessary to the statement of a cause of action that the plaintiffs have pleaded facts showing a reasonable probability of the property yielding a sum sufficient to be of benefit to the minority stockholders. They do not allege even that they believe that such a sum could be obtained. The plaintiffs do not allege that the majority stockholders

who are indirectly charged with dealing unfairly with them to favor their own interests are insolvent so that damages could not be recovered. Courts move with caution in appointing receivers and will do so only when it reasonably appears that those who seek the relief are in imminent danger of suffering irreparable loss or injury. Reid Drug Company v. Salyer, 268 Ky. 522, 105 S. W. (2d) 625. The courts should not interfere with corporate management and take control of the disposition of its property in order to test out the questions of bad faith on the part of the majority stockholders and whether the property will actually yield a larger sum. There should be alleged at least a reasonable probability of benefit. In the absence of such pleading, we think the court properly sustained the demurrer to the petition as amended.

The judgment is affirmed.