Case 50.—ACTION BY WALTER CLEARY AND OTHERS
AGAINST THE MANUFACTURERS' LAND AND IMPROVE-
MENT CO. FOR THE APPOINTMENT OF A RECEIVER.—
November 9.

## Manufacturers' Land and Improvement Co. v. Cleary, &c.

Appeal from Kenton Circuit Court.

W. McD. SHAW, Circuit Judge.

From an order appointing a receiver defendant ap-
peals.   Reversed.

1. Corporations—Members and. Stockholders—Right to Control
   Corporate Affairs—Stockholders of a corporation impliedly
   agree that the corporation's affairs shall, within the limits
   defined by its articles, be controlled by the governing board,
   and that the corporation shall endure for the purpose for
   which it is organized for the entire period fixed by its
   articles, unless sooner dissolved by operation of law, and
   the judgment of the governing body as to matters within the
   powers of the corporation, although it is unwisely exercised,
   is in the absence of fraud committed or threatened against
   the corporation or the minority stockholders, entirely beyond
   the control of the stockholders through the intervention of
   the courts, except in a case where the corporate enterprise
   is impossible of execution.

2. Same—Dissolution of Corporation—Failure of Purpose—In
   order that the business of a corporation may be terminated
   at the complaint of a stockholder, on the ground that its
   purpose is impossible of execution, such impossibility must
   be demonstrated to a certainty, and is not to be determined
   merely by the weight of the evidence.   ·

3. Same—Grounds of Dissolution—Lack of Success—The fact
   that a corporation has small chance of realizing its ex-
   pectations of making money for its stockholders, and that
   its venture has not shown evidence of success within a
   reasonable time, is not, in the absence of bad faith on the
   part of the officers or majority stockholders, ground for the

premature termination of the corporation's existence on the complaint of a minority stockholder.

S. D. ROUSE for appellant.

### POINTS AND AUTHORITIES.

1. Appellees have no right to sue. (Brunk v. Means, 11 B. Mon., 214; Hull v. Deatly's Adm'r, 7 Bush, 687.)

2. This suit can not be maintained as the suit of a stockholder. (Smith on Receiverships, sec. 5, pp. 10-19; Verplank v. Mercantile Ins. Co., 2 Paige, 438; O'Connor v. Knoxville Hotel Ass'n, 28 S. W., 308; Morawetz on Private Corporations, 2d Ed., vol. 1, secs. 283, 284, 416; Fountain Ferry T. Co. v. Jewell, 8 B. M., 140; Cook on Corporations, vol. 2, sec. 629; vol. 1, sec. 629; Craft v. Lumpkin Min. Co., 61 Ga., 465; Oldham v. Mt. Sterling Impr. Co., 103 Ky., 530; Ky. Stats., sec. 516; Bouvier's Dictionary.)

3. The motion to consolidate was properly refused; the plea of another action should have been conclusive. (Bowen v. Sebree, 2 Bush, 112; Pritchard v. Peace, 98 Ky., 99; Davis v. Dycus, 7 Bush, 4; Emmerson v. Herreford, 8 Bush, 229; 1 Duv., 321; 2 Met., 92.)

4. Every claim set up in the petition is completely refuted by the law and the proof.

MYERS & HOWARD for appellee.

### POINTS AND AUTHORITIES.

1. The right of a court of equity to wind up the affairs of a corporation and distribute its assets for nonuser, or when its object is impossible of accomplishment, or when it has not, after due time and opportunity, earned some dividends, is a sound proposition of equity. (Morawetz on Corps., sec. 284; Beach on Private Corp., secs. 782, 783; Spelling on Private Corp., sec. 1157; O'Connor v. Knoxville Hotel Co., 28 S. W., 308, 93 Tenn Rep., 708; Miner v. Belle Isle Ice Co. [Mich.], 17 L. R. A., 417; Gorman v. Russell, 14 Col., 531.)

2. Under the authorities it is not material to the decision of this case for appellee that the appellant should be insolvent.

OPINION BY JUDGE O'REAR—Reversing.

Appellant corporation was organized under the general law in 1887, to endure for twenty-five years unless sooner dissolved by its stockholders. The cor--

poration's business, as stated in its articles, was to deal in real estate and to buy, own, lease, improve and sell real estate.  Its authorized capital is $100,-000, but it was provided that it might begin business upon $50,000 being subscribed.  About $84,000 was subscribed, and was paid up, except three subscribing stockholders; appellees' ancestor, W. W. Cleary, being one of the three.  It invested its capital near about the time of its organization in certain unimproved real estate in the city of Covington.  In addition it incurred debts of some $15,000 in buying real estate, which are secured by mortgages on its property.  Its real estate is rented out at about $3,100 per annum.  Its salary list is $120 a year, payable to its secretary, the only salaried officer.  Its taxes are about $900 a year.  It has $7,000 of purchase money notes for land sold, and some $3,400 cash in its treasury.  It is officered, and is a going concern.  Appellees, representatives of W. W. Cleary, deceased, a stockholder, brought this suit for a dissolution of the corporation, because, it was alleged, it was doing nothing, had never made any money, its purpose was impossible of execution, and it was insolvent.  As an incident to that final relief, appellees sought and obtained the appointment of a receiver of the corporate assets.  This appeal is prosecuted from the order of the court appointing a receiver.

Those who embark in a corporate enterprise as stockholders impliedly agree that its affairs shall, so far as they are confined to the scope of the business set out in the articles of incorporation, be controlled by a governing board, selected in the manner provided in the articles and in accordance with the law, and that the corporation shall endure for the purpose for which it was organized for the entire period fixed by the articles, unless sooner dissolved by

operation of law.  The judgment or discretion of
the governing body, usually a board of directors, as
to matters intra vires, is entirely beyond the control
of the stockholders through the intervention of the
courts, except for frauds committed or threatened
against the corporation or the minority stockholders.
An exception to this general rule is where the corpor-
ate enterprise is one impossible of execution.   But
whether the plan being executed by the governing
body is wise, or even whether it may not involve the
corporation in ultimate losses, is a matter that the
courts could not inquire into or remedy, without exer-
cising a jurisdiction of espionage and censorship ut-
terly inconsistent with the rights of property as rec-
ognized by the common law.  The corporation owns
its property.  It has the same right to manage it ac-
cording to its judgment, which is evidenced by the
judgment of its directors, so long as it acts within
the scope of its corporate powers, as any individual
has his own property.  No court is ever permitted to
interfere with an owner's control of his property so
long as it is lawful, no matter how foolish it may be.
Corporate ownership of property is the same as
individual ownership, so far as the right of manage-
ment is concerned, except that for certain purposes
the corporation is held to be a trustee of the corpor-
ate property for the benefit of its creditors and stock-
holders; that is, of creditors to the payment of their
debts, of stockholders to the honest employment of
the assets in the corporate enterprise.  Only in the
event of abuse of this implied trust is a court of
equity warranted in interfering with the corporate
management.

In the case at bar the dissolution of appellant cor-
poration before the time fixed in the articles is sought
upon the alleged ground that it is dormant, has never

made money enough to pay a dividend, has encoun-
tered obstacles which make it certain that it will not
be a paying investment, and, consequently, that the
purpose for which it was organized, to wit, to make
money for its stockholders, is one impossible of ex-
ecution.   While it is true that trading or commercial
corporations may be assumed to have been organized
solely to make money for their stockholders, it does
not follow that the enterprise must be abandoned
upon the first disappointment, at the complaint of a
single stockholder.  The fact that the corporators had
fixed a definite period of existence is an implication
that the venture shall be continued that long, unless
the corporation be sooner dissolved in the manner
allowed by law.   All business is not at once successful
or even successful at all.   Yet it may be pursued in
the hope of success, which is the mainspring of traffic.
It would be unwarrantable, as well as intolerable
under a system of free government, that the courts
should interfere to put a stop to all business ventures
which within a reasonable time had not shown evi-
dence of success or which were not, in the court's
opinion, being pursued with proper diligence and
wisdom.   Whether the corporation's purpose be one
impossible of execution, so that it may be terminated
at the complaint of any stockholder, is not a matter
to be determined by the weight of the evidence.   It
must be a certainty, as things are deemed to be cer-
tain in law.   Then, as it is implied also that the cor-
poration will pursue the execution of a possible and
lawful purpose, the stockholders are absolved from
their mutual undertaking, and the corporate assets
will be distributed as if the event had happened when
its existence should end.

The facts of this case show that appellant corpor-
ation owned about $70,000 worth of property.   It was

bought when such real estate had inflated values, which greatly depreciated during the panic of 1893-96. Whether the original expectations of the promoters will ever be realized seems to be problematical. Yet it can not be said with any certainty that they will not be. Just what the future may hold for these properties is that uncertainty which gives value to all things speculated in, in the markets. It would never do, in our opinion, to say that, just because the chance of appellant's realizing its expectations seemed now to be slim, its existence should be prematurely ended and the venture outlawed. No bad faith on the part of the officers or majority stockholders is shown. They are doing with this property, for aught the record shows, just what many a prudent owner might well do—hold on, without actual evident losses, till a rising market has brought relief from what looked like, at one time, a disastrous investment. The cases and text-books cited by both litigants all really present these ideas in one form or another. It is not thought to be necessary to further elaborate them.

We are of opinion that the judgment appointing the receiver was unauthorized, and it is therefore reversed. Cause remanded for proceedings not inconsistent herewith.