## Poutch, et al. v. National Foundry and Machine Company, et al.

(Decided February 29, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

Corporation Stock.   Owners—Increase of Salaries—Legality.—Three
persons who owned a majority of the stock of a corporation, were
also its directors, and respectively its president, vice president
and secretary.   As directors they increased their salaries as
president, vice president and secretary.   A minority stockholder
complained.   Held, that as the proof showed that the salaries
paid were reasonable for the services rendered, the action of
the directors was not fraudulent; and that no recovery could be
had.

HELM & HELM and P. H. SAVAGE for appellant.

HINES & NORMAN for appellee, National Foundry & Machine
Company.

J. C. DODD for appellee, Doerhofer.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Frank L. Reeder, Albert B. Freeville and Basil Doer-
hofer own 282 shares of stock in the National Foundry
and Machine Company out of a total issue of 500 shares.
H. H. Poutch and wife, who are among the minority
stockholders, brought this suit for themselves and the
other stockholders against the three  persons  named
and the company, complaining that they had paid them-
selves out of the money of the company, sums to which
they were not entitled, they being the directors of the
company and also its president, secretary and treasurer
and vice president.   By resolution of the Board of Di-
rectors on January 11, 1899, the president and manager's
salaries were fixed at $2,000 per annum, the vice presi-
dent and superintendent's salaries at $1,500 per annum;
and the secretary and treasurer's salary at $1,300 per
annum.   By a resolution adopted on February 5, 1901,
it was provided that the salaries of the officers for the
ensuing year should remain the same as for the last
year.   But no resolution appears on the books fixing the
salaries for the year 1900.   Reeder was president and
also treasurer; Freeville was secretary and assistant
treasurer, also superintendent or general manager.   The
company ran a foundry.   Freeville stayed in the office
and ran the office end of the business.   Reeder was a
practical mechanic and ran the foundry.   Doerhofer was
connected with several moneyed institutions and ran the
financial part of the business, exercising a general over-

sight over it all. While they were the directors of the
company their salaries were paid as follows:

| | F. L. Reeder | A. B. Freeville | Basil Doerhofer |
|---|---|---|---|
| 1900-3 | $3,000.00 | $2,000.00 | ........ |
| 1904-5 | 3,300.00 | 2,300.00 | ........ |
| 1906-7 | 4,500.00 | 3,500.00 | $1,000.00 |
| 1908 | 5,750.00 | 4,740.00 | 1,500.00 |
| 1909 | 6,500.00 | 5,500.00 | 2,000.00 |

The complaint of Poutch is that the increase of their
salaries was not justified by the business or anything
in the condition of the company and was simply a
division of the profits of the company between them-
selves in fraud of the rights of the other stockholders.
The circuit court on the evidence dismissed the petition,
and Poutch appeals.

There is no complaint as to the management of the
company's business. The company began business in
the year 1892 with a capital of $15,000.00. This was
afterwards increased to $50,000.00, but only $30,000.00
was actually paid in. During its existence the company
has paid out of its profits in stock or cash to the stock-
holders $87,797.59. On December 31, 1909, it had assets
as follows: Real estate, $33,640; buildings, $22,114.07;
machinery, $28,940.88; accounts due it about $30,000.00;
cash on hand about $3,000; other assets $5,000 or $6,000.
It owed about $20,000. The proof also shows that
Reeder, Freeville and Doerhofer have given their per-
sonal attention to the business of the company and that
its success has been due largely to their efforts. They
are all good business men, and skilled in their respect-
ive lines. The gross sales of the company for the years
named are as follows: 1900, $168,000.00; 1901, $113,-
000.00; 1902, $139,000.00; 1903, $140,000.00; 1904, $113,-
000.00; 1905, $115,000.00; 1906, $140,000.00; 1907, $141,-
000.00; 1908, $136,000.00; 1909, $103,000.00.

The directors entered on their books no resolution
changing the salaries or declaring dividends from 1900
to 1909, but the proof is undisputed that the directors
in fact met, declared the dividends and fixed the salaries
as indicated above. The minutes not having been en-
tered on the books when they should have been, may be
considered when entered later. Parol proof may be re-
ceived to show what was in fact done by the directors.
There was a quorum of the Board without either of
appellees voting on his own increase of salary and none

of them did vote in his own case. It is also insisted that during this time, statements which had been hitherto mailed to the stockholders were not mailed out to them showing the condition of the company; but this is also explained and seems to have been acquiesced in by the stockholders. No stockholder now but Poutch complains, and we think it evident from the record that many of them at least knew how things were going at the time these transactions were had or soon thereafter. Poutch did not complain until he fell out with the directors because they did not give him the insurance of the company.

It is insisted that since 1900 the business of the company has not been as large as it was before; that notwithstanding this the salaries of the officers have been increased and that the figures show on their face that these increases were made at about the same rate to each of them, that is, they show that the three of them were dividing the money between them. There is some force in this. On the other hand, a manufacturing business such as this company was doing must be skillfully managed. If it is not managed by men of skill, the corporation may soon become bankrupt. Men who have the skill and ability to manage successfully such a business can command good salaries. The undisputed evidence in the record is that the salaries paid are not more than the services are worth.

It is true directors hold a position of trust. It is their duty to manage the business of the corporation honestly and with fidelity. As they occupy a position of trust when they vote a salary to one another, they can not keep the money if they acted to the prejudice of the corporation. It has been held that the presumption is that directors act in their own interest under such circumstances as we have here, and that the burden of proof is on them to show the fairness of the transaction. But whatever may be held as to the burden of proof, the general rule is that the action of the directors must be a fraud on the corporation, actually or constructively, before the directors can be held liable. (Fillebrown v. Hayward, 190 Mass., 472; Davis v. Memphis City Railway, 22 Fed. 883; Manufacturer's Land Co. v. Cleary, 121 Ky., 403; Pittsburg, etc., R. R. Co. v. Dodd, 115 Ky., 176; Eaton v. Robinson, 19 R. I., 146.)

The proof here shows that the corporators agreed among themselves that the salaries should be kept low

until the company got on its feet; and that the increase of salaries which is complained of was not improper or excessive. There has been a great increase in the cost of living in the last six years. The purchasing power of money is not near so large as it was then, wages generally have increased, and it is manifest that some increase in these salaries might properly have been made. We give considerable weight to the finding of the chancellor on questions of fact and we cannot undertake to say how much increase in these salaries would be reasonable, upon our own experience, or without any proof to guide us. We do not decide that the salaries at this rate may continue to be paid in the future. We only decline to disturb the finding of the chancellor on the record as here presented.

Judgment affirmed.