## Elkhorn Hazard Coal Company v. Fairchild, et al.

(Decided April 22, 1921.)

### Appeal from Letcher Circuit Court.

1. Receivers—Grounds of Appointment.—When all the equitable grounds asserted by a plaintiff in his petition for the appointment of a receiver are denied, there is nothing left to sustain the motion, and the plaintiff must by evidence disprove the answer and sustain the grounds asserted in the petition if he would succeed.
2. Receivers—Other Remedies.—A receiver will not be appointed, where the party seeking it, has another remedy, which is adequate.
3. Receivers — Grounds of Appointment — Damages. — Although a plaintiff has a lien upon the property involved in the action a receiver will not be appointed to take possession and to administer it, unless it is shown that there is probable danger of the property being lost, destroyed, injured or removed from the reach of the processes of the court.

JOHN D. CARROLL, T. E. MOORE, JR., and FRENCH HAWK for appellant.

H. C. FAULKNER, W. H. MAY, D. D. FIELDS & DAY and W. A. STANFILL for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT— Reversing.

This is an appeal from the order of the circuit court, appointing a receiver for the property of appellant and directing him to take possession of and to administer same in the event the appellant should fail to pay to the appellees the sum of $6,004.61, within thirty days after the rendering of the order, which occurred on the third day of February, 1921. The appellant having appealed from the order, for cause shown and as authorized by section 110 of the Constitution and 949 of Ky. Stats., a writ was issued out of this court suspending the power of the receiver to take possession of the property until such time as it might be determined whether the order should

have been made. The only issue for decision upon this appeal is whether the circuit court abused its discretion in the appointment of a receiver, and empowering him to take possession and administer the property, and no other question will be considered or decided, although a statement of certain facts shown upon the record will be necessary to indicate the basis of the decision.

The appellees are lessors and the appellant is a lessee of a lease which was executed and delivered by the lessors on the 22nd day of August, 1917, and accepted by the lessee for the purpose of mining, shipping and marketing the coals in about 850 acres of land. Among other terms and conditions of the contract were the following: The lease was to continue for twenty years or until all the merchantable coals in the lands can be mined without loss to the lessee, during which time the latter is to have the exclusive privilege of mining and marketing the coals; the lessee is to so mine the coals in the lands, as to save as much of them as possible, consistent with the proper and approved methods of mining; the lessee may construct roadways over the lands and build and place thereon railroads, mining houses, commissaries, tipples, chutes, and in fact all the equipment which it may deem necessary for the purpose of conducting and performing its mining operations; the lessee is to pay to the lessors the sum of $1,500.00 upon the delivery of the lease and a royalty of eight cents per ton for the coals mined and sold until seventy-five thousand tons have been mined, and thereafter the royalty is to be ten cents per ton; for the year ending August 22nd, 1918, the lessee is to pay to the lessors only the royalty reserved upon each ton of coals mined and marketed, but for the year ending August 22nd, 1919, the lessee is to pay to the lessors a minimum sum in royalties of $4,000.00, and for the year ending August 22, 1920, a minimum sum in royalties of $5,000.00 and for each year thereafter a minimum sum in royalties of $8,000.00; these minimum sums of royalties are to be paid whether a sufficient amount of coals are mined and marketed to make those sums in royalties at the sum agreed upon per ton or not, but if not, the lessee may take out a sufficient amount of coals in any year thereafter, free of royalty, to make the sums so overpaid, and thus to make in all the payment of a royalty of ten cents per ton. The contract, also, contained a clause which is as follows:

"It is further agreed that in case of a car shortage making it impossible for the lessee to secure cars for the shipment of said coal so mined, or in case the government should take charge and control of the management of all coal mines, or in case of fire, riot or any other unavoidable condition making it impossible to mine same except at a loss, then in that event said minimum royalties shall not apply." It was also provided by another clause of the contract that "In the event of any difference or dispute arising between the lessors and lessee hereto, springing out of the terms of this lease, or the operation of the lessee hereunder, the same shall be submitted to arbitration." The manner of the selection of the arbitrators and their duties to hear and decide the controversies submitted to them were also stipulated by the contract.

This action was instituted on the 21st day of January, 1921, by a verified petition in equity by the appellees. After averring that the large quantity and quality of coals under the leased premises justified the installation and equipment of a mining plant of the most modern type and equipment, and that when the lease was executed it was contemplated by the parties that the lessee would develop the operations upon a scale which would produce the maximum tonnage of coals possible, consistent with approved mining methods and that the contract provided that the lessee would mine the coal in a manner so as to save as much of it as possible, and in accordance with approved, modern mining methods, it was charged that in violation of the terms of the lease contract the lessee has mined and is continuing to mine the coals in an unskillful, impractical and grossly negligent manner and is rapidly destroying the mines and depreciating their value by the permission and commission of waste therein in various forms and ways, not necessary here to be enumerated, and to the extent that great quantities of coals, which are the chief value of the leased premises, have been and are being destroyed and rendered unrecoverable, and thereby depleting the resources and value of the estate and inflicting irreparable loss upon the lessors, and if permitted to continue, the power to develop the mines in the future will be destroyed to such an extent that an action for damages will not afford the lessors relief, and further that the lessee had failed to provide itself with the equipment and facilities for mining and marketing the coals as contemplated by the contract. It was

further alleged that the lessee had failed to pay the minimum sum in royalties provided by the lease contract for the years ending August 22nd, 1919, and August 22nd, 1920, and for the year ending August 22nd, 1921, up to the time of the filing of the action, and was indebted to the lessors on that account in excess of $8,000.00, and notwithstanding the negligence of lessee in paying the indebtedness on account of royalties, it was dividing among its stockholders large dividends in money, and without any sufficient sum in its treasury or the value of its property to justify it, it was issuing stock of fictitious character and awarding it to its stockholders as stock dividends, which was averred to be an act of insolvency. It was furthermore charged that the lessee was insolvent.

The appellees further averred that the alleged acts of appellant were such as to forfeit its right to continue operations under the lease, and to amount to a forfeiture of same; that lessors have a landlord's lien upon the leased premises and the houses and equipment placed thereon by the lessee, to secure the payment of the royalties; and that the alleged wrongful and negligent acts of the lessee were rapidly impairing the lessors' security and to such an extent as endangered the collection of their debt on account of the royalties due and unpaid. The prayer of the petition was for the appointment of a receiver for the lands covered by the lease, and of the property and mining equipment thereon; for an injunction to restrain the lessee from any further acts such as complained of; and for a judgment declaring the lease contract forfeited because of lessee's failure to comply with its terms, and for the recovery of $8,423.00, the sum of the alleged unpaid royalties, and the enforcement of the lien claimed, and a sale of the property to satisfy the debt.

The appellant, by a verified answer, denied that it was insolvent or that the collection of appellees' debt was endangered, or that it had done any of the acts alleged in violation of the terms of the lease, or had committed or permitted any of the acts of waste alleged, and made a denial of each averment of the petition which set forth any act of negligence, waste or failure to perform or keep the conditions of the lease, and denied any damages suffered or feared by the appellees. It denied that it owed or was due to pay the appellee anything on account of royalties, and averred that in 1920, the appellees required it to submit a controversy between them and it with reference

to the minimum sum of royalties claimed to be due under the terms of the lease and that the arbitrators made an award by which it was decided that on account of the existence of certain conditions it was not obligated to pay the minimum sum of royalties claimed under the lease, but only the royalty per ton for the coals mined and marketed. A copy of the alleged award was filed with the answer. The appellant, also, claimed that under the terms of the contract embraced by the lease that it was entitled to have an arbitration and an award thereon of the matters in controversy between it and appellees, before any action could be maintained in court, and that it had given notice of its desire to arbitrate, as required by the terms of the lease, and it relied upon same as a plea in abatement to the prosecution of the action. It, also, averred that in endeavoring to carry out the terms of the lease it had placed equipment upon the leased lands at the cost and value of over $80,000.00.

The appellees denied that the expenditure made by appellant for equipment upon the leasehold amounted in excess of a sum of approximately $40,000.00; denied that the arbitration award had any binding effect, and alleged that the award was void because arrived at by such gross mistake that it amounted to fraud. The affirmative averments of appellees with reference to the nullity of the award were denied.

Upon the hearing of the motion made by appellees for the appointment of a receiver, the court had nothing before it for consideration, except the pleadings and a statement of each of the parties concerning the total sum in royalties, which had been paid to the appellees, in each year, since the making of the lease—these statements being presented at the request of the court. No evidence, upon any of the issues made in the pleadings, was offered, heard or considered. The statement of the amount of royalties paid by appellant, as admitted by it, was accepted by the appellees for the purposes of the motion as the true sum so paid. All of the averments of the petition and facts alleged therein which constituted the grounds for asking the receivership, having been denied by a verified answer and no evidence of the truth of the averments having been offered, there was no allegation of fact in the petition, which the court was authorized to accept as true. From its admission in open court, it appeared that appellant had not paid the minimum sum

in royalties agreed to be paid for the years ending August 22nd, 1919, August 22nd, 1920 and the proportion agreed to be paid for the following year, and which had become due up to January 1st, 1921, of that year. The amount of the minimum royalties for that time, over the sum of the royalties actually paid, which was the sum per ton or at least that were then due, amounted, according to the finding of the court to the sum of $6,004.26. The copy of the award of the arbitrators on file, but the validity of which is assailed by appellees, shows that by that award the appellant was excused from paying the minimum sum of royalties agreed upon for the year ending August 22nd, 1919, and which sum in excess of the royalties actually paid for that year was alleged by appellees and not denied by appellant, to be in excess of $3,000.00, which deducted from the royalties found by the court to be due, would reduce the indebtedness on that account to less than $3,000.00. It should further be stated that it is the contention of the appellant that no royalties whatever are due, as on account of the award and other conditions of the lease, the circumstances had been such as relieved it of the obligation to pay any royalties in excess of the specified royalties upon each ton of coals which had been mined and marketed, but these contentions of the appellant are all controverted by the appellees. Although upon a motion for the appointment of a receiver the court may look to the pleadings of the plaintiff, it must, also, look to those of the defendant, and if the equitable grounds asserted in the petition for the appointment of a receiver are fully denied, there is nothing left to sustain the motion, and before a receiver can be appointed under such circumstances, the plaintiff must, by evidence disprove the answer and sustain the grounds asserted by him for the appointment. Cameron v. Groveland Imp. Co., 54 Pac. 1128; Thompson v. Diffendender, 1 Md. 489; Cohen v. Meyers, 42 Ga. 46; Rhodes v. Lee, 32 Ga. 471. The application of the foregoing common principles left nothing for consideration upon the motion for a receiver, except the claim that the appellant owed to appellees a debt of $6,004.26, which consisted of the excess of minimum royalties for the preceding years over the royalties to be paid upon the coals actually mined and sold and was a debt due appellees unless the appellant should finally make good its defense to this claim of indebtedness, and it had already been excused from the

payment of about one-half of it by the award of the arbitrators, if the award shall be adjudged to be valid, which, however, is a subject for future litigation and not, we suppose, intended to be disposed of upon the motion. It was not, however, necessary in order for the appointment of a receiver that the claim of indebtedness should be absolutely incontrovertible, and without intending to in any way decide that issue, but for the purpose of this decision, admitting that appellant was a debtor of appellees in the sum of $6,004.26 for unpaid portions of the minimum sums of royalties agreed to be paid by the terms of the lease, did that fact authorize the taking of appellant's property and business from its hands and control and placing it in that of a receiver? It is admitted by counsel for appellant that appellees have a lien upon the property of the appellant, connected with the leasehold, to secure the payment of the royalties due them under the lease, and section 298, Civil Code, provides:

"On the motion of any party to an action which shows that he has, or probably has, a right to, a lien upon, or an interest in any property or fund, the right to which is involved in the action and that the property or fund is in danger of being lost, removed or materially injured, the court or the judge thereof, during vacation, may appoint a receiver to take charge of the property or fund during the pendency of the action and may order and coerce the delivery of it to him. . . . ." The terms of that statute, however, do not imperatively require the appointment of a receiver for the property of a debtor at the demand of a creditor who has a lien upon the property. The appointment of a receiver is a matter always within the sound discretion of the court to be exercised, however, in accordance with established legal principles. Woodward v. Woodward, 17 K. L. R. 464; Hurst v. Nicola Bros., 23 K. L. R. 1406; L. & N. R. R. Co. v. Eakin, 109 Ky. 745. The appointment of a receiver is in the nature of a provisional remedy, but is the last of that sort of remedies to be resorted to, and in the exercise of its legal discretion in granting or denying a motion for a receiver, the court must be guided largely by the facts of the particular case, and keep in mind that the discretion must be exercised only as an auxiliary to attain the ends of justice more completely, when no other remedy will accomplish that end so satisfactorily. One of the established legal principles controlling the appointment of a receiver

is that it should be refused when the plaintiff has another adequate remedy. McClure v. McGee, 128 Ky. 467; Collins v. Richert, 14 Bush 621; Floor v. Floor, 27 K. L. R. 894; 34 Cyc. 23; Tarvin v. Walker Creek Coal & Coke Co., 109 Ky. 579; Harmon v. Ky. Coal Imp. Co., *supra.* Neither will a receiver be appointed where it appears that a greater injury would probably be caused by the appointment than by leaving the property undisturbed. When a receiver is appointed for the property of a debtor upon the motion of a lienholder, it is for the purpose of keeping and preserving the property so that the source of the security for the debt will not be destroyed, injured or removed, and thus to destroy or render less valuable the source of security, and in such instances to sustain the motion, it must be shown that the receivership is necessary to prevent fraud, or to save the property from material injury, or to rescue it from threatened destruction, and it is almost universally held that it is never proper to appoint a receiver in the absence of fraud or danger to the property, which is sought to be reached, of being lost, squandered, wasted, injured or removed to where the process of the court can not reach it. Vanable v. Smith, 98 N. C. 519; State v. Ross, 122 Mo. 435; Baker v. Backus, 32 Ill. 79; Furlong v. Edwards, 3 Md. 112; Crawford v. Ross, 39 Ga. 44; Falmouth National Bank v. Cape Cod Canal Co., 166 Mass. 150; Summers Fiber Co. v. Walker, 33 K. L. R. 153. This statement of the principle agrees with the requirements of section 298, Civil Code, *supra,* which provides that a receiver may be appointed where one shows that he probably has a lien upon property which is involved in the action, and that the property is in danger of being lost, removed or materially injured, and without such showing the court is without authority to appoint a receiver for property, although the plaintiff is a lienholder of the character of the lien here asserted. In this case, as heretofore stated, there is no evidence indicating any fraudulent purpose on the part of the appellant with regard to the property, and there is not shown any danger to the property carrying the lien, nor the necessity for the appointment of a receiver to preserve it from waste, destruction or removal, and there is no proof, whatever, of the insolvency of the appellant. The appellant being solvent and no evidence of its being indebted to any one, except the claim of debt to appellees which is controverted, and owning property upon the

leasehold of the value of many thousands of dollars, it is apparent that the appellees have an adequate remedy for the collection of their debt by the enforcement of the lien which they invoke, or by judgment and a sale under execution, and thus none of the features which justify the appointment of a receiver upon the motion of a lien creditor appear, nor does it appear in any way that the ultimate rights of the appellees under the lease are endangered.

The order appointing the receiver is therefore reversed and the cause remanded with directions to set aside the order appointing the receiver.