## Fleming, Trustee v. Virginia Mining Company.

(Decided October 13, 1922.)

### Appeal from Floyd Circuit Court.

1. Receivers—Appointment.—The authority for the appointment of a receiver at the instance of a vendor with a retained lien upon the property is to be found in section 298 of the Civil Code of Practice and the relief will not be granted where the grounds therefor are denied, unless it reasonably appears from the evidence that there is probable danger of the property being lost, destroyed, injured or removed from the reach of the processes of the court, and the mere fact that its value is insufficient to satisfy the debt, unless, perhaps, the insufficiency was produced by defendant, will not authorize the appointment and the consequent taking of the possession from the owner; nor will a receiver ordinarily be appointed where the party seeking such relief has another remedy which is adequate.

2. Receivers—Appointment.—In this case it was quite conclusively proven that the property was worth more than when it was purchased, at which time $2,800.00 was paid, leaving a balance of $11,200.00, secured by a lien upon it. There was no proof of defendant's insolvency, but it appeared that he owed about $350.00 of current debts and that the property was in better physical condition than when he purchased it. Neither was there any proof of waste or bad management: Held, that the court erred in sustaining the motion for a receiver made at the instance of the vendor in a suit filed by him to enforce his lien for the purchase price.

B. F. COMBS and A. B. COMBS for appellant.

A. J. MAY and B. M. JAMES for appellee

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee and plaintiff below, Virginia Mining Company, in May, 1920, purchased from R. L. Smith and others a coal lease and its appurtenances on about one hundred and seventy-five  acres of land at the mouth of Beaver creek in Floyd county. It took charge of the lease and operated the mine which had been opened by its vendors until some time before October 29, 1921, on which day it sold all its interest in the lease and the equipment thereon, together with its capital stock, to appellant and

defendant below, A. Fleming, trustee, at the agreed price of $14,000.00, $2,800.00 of which was paid in cash at the time and the balance of $11,200.00 was evidenced by three notes executed by defendant for $3,000.00 and due February 1, 1922, May 1, 1922, and September 1, 1922, respectively; the remainder of $2,200.00 was evidenced in the same way and was due November 1, 1922.

This action was filed in the Floyd circuit court by plaintiff on June 8, 1922, against the defendant, and in the petition it was alleged that the first two notes for $3,000.00 each were past due and unpaid, and that a like sum would be due on September 1, 1922, and the balance of $2,200.00 on November 1, 1922; that the contract of sale between plaintiff and defendant retained a lien on the property to secure all of the deferred payments; that defendant was insolvent; that its debt would be endangered by a delay of judgment and a return of "no property found" on execution; that the property was in danger of being lost or materially injured; that defendant had incurred debts in the operation of the mine which he had not paid; that he was not operating it in a skillful and workmanlike manner or to the best advantage; that the property was worth less than the amount of the indebtedness, and that plaintiff's debt was in danger of being lost or materially injured unless a receiver was appointed to take charge of the property and operate it; and, in addition to a personal judgment, the appointment of a receiver was asked to take charge of and to operate the property, and a motion, after notice served, was made to that effect. Upon the trial of the motion the evidence was heard, partly by affidavits and partly by oral testimony transcribed by the court's stenographer and made a part of the record, and the court in its judgment appointed a receiver with directions to take possession of the property and operate it with the usual directions in such cases, but suspended the taking effect of the appointment for six days from the time of its entry within which time defendant was given leave to pay the past due indebtedness which, if done, the judgment appointing the receiver would become inoperative. From that judgment defendant has prosecuted this appeal, insisting that the evidence was insufficient to authorize the judgment of the court in sustaining the motion, and a reversal is asked.

As a general rule the remedy of a receivership is purely ancillary, being a proceeding *in rem*, though the court may appoint a receiver under certain conditions

and circumstances as an independent remedy and, of course, as the main object and purpose of the suit. 23 R. C. L. 11. It is always intended to prevent injury to the thing (the *rem*) in controversy and to preserve it pending litigation for the security of the parties in interest and is regarded as a provisional remedy. The appointment can not be said to exist as a matter of right, since the court in granting it must be governed by a sound judicial discretion in the light of all the facts and circumstances of the case and with the view of protecting the rights of parties interested in the subject matter, and only then when there is no other adequate remedy at law. The discretion is to be exercised with caution and circumspection after a full consideration of the facts of the particular case and the interest of all parties concerned. R. C. L., *supra,* 10-11; Collins v. Richart, 14 Bush 621; Columbia Finance & Trust Co. v. Morgan, 19 Ky. L. R. 1761; Murray v. Murray, 124 Ky. 426, and Elkhorn Hazard Coal Co. v. Fairchild, 191 Ky. 276. The reason for such restrictions on the discretion of the court in the appointment of a receiver is that if the motion is granted and the receiver appointed the possession and control of the property is taken away from the owner and put into the hands of a stranger who, necessarily, would not be so much interested in its preservation and the profit to be derived from the use of it, as would the owner. The remedy existed at common law but the grounds upon which it may be exercised in this jurisdiction, as well as the practice governing the proceeding, are controlled by sections 298-302, inclusive, of our Civil Code of Practice. Section 298 authorizes the appointment of a receiver ''On the motion of any party to an action who shows that he has, or probably has, a right to, a lien upon, or an interest in, any property or fund, the right to which is involved in the action, and that the property or fund is in danger of being lost, removed or materially injured;'' while section 299 confers on a *mortgagor* the right to the remedy ''if it appear that the property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.''

This court, in the cases *supra,* pointed out the distinction between the practice relating to the granting of the remedy under the two sections of the Code, the chief one being that in a proceeding by a *mortgagor* under sec-

tion 299, the prerequisite to the appointment was to prove to the satisfaction of the court the insufficiency of the value of the property to discharge the debt, and that the debtor who had possession of it was insolvent; while a vendor retaining a lien upon the property and whose right is governed by the provisions of sec. 298 "occupies a no more favorable attitude, so far as concerns the property and property rights of the vendee, than any other creditor, except to the extent of his lien upon the land (or other property) sold by him;" and that in an application under the latter section by a vendor against the vendee "the motion should not prevail, unless it is made manifest not only that the party in possession is insolvent and the property insufficient to pay the debt, but also that the party in possession is committing or threatening to commit waste, or by bad husbandry is impairing the value of plaintiff's security." Columbia Finance & Trust Co. case, *supra*. The same cautionary rule governing the courts in the appointment of receivers in such cases is upheld by the other cases from this court referred to and applies generally as a restraint upon the exercise of the right, the substance of which rule is that the grounds authorizing the remedy in the particular jurisdiction must clearly appear from the evidence heard, otherwise the court should deny the motion. See also case of Greasy Creek Coal and Land Company v. Greasy Creek Coal Company, this day decided.

This case is governed by the provisions of section 298 with the interpretations thereof by the cited cases from this court; and, weighing the testimony heard upon the trial in the light of those interpretations we are convinced that the plaintiff failed to sustain the grounds for the appointment alleged in its petition, and that the court erred in sustaining the motion and in appointing the receiver. About all that the evidence shows is that defendant owes the balance of $11,200.00 of the purchase money for the property involved; that it was worth the price he agreed to pay for it when he bought it, and was worth considerably more than that sum at the time the motion was heard. He owed a small sum for royalties to the original lessors, but it is shown that they were in a controversy as to whom it should be paid and which was unsettled at the time of filing the action and because of which it had not been paid. But, whether so or not, the amount was comparatively insignificant, as was also true

of other debts which defendant had incurred in the operation of the mine after he took charge of it. It was shown without contradiction that the property was considerably run down when defendant* bought it and he spent at least $1,500.00 in repairing it and putting it in shape to be successfully operated, and it was also proven by himself and his foreman, who was also the foreman of plaintiff before it sold the property, and who was introduced by plaintiff, that it was in better condition at the time of the trial than when the defendant purchased it and was producing more coal with the same number of workmen, which was about thirty tons per day, with a clear profit of about one dollar and twenty-five cents per ton. Furthermore, it appeared that the defendant had at least an excuse for not paying all of his indebtedness to plaintiff, because he was garnisheed for $2,000.00 in a suit brought against plaintiff by its vendor, Smith; and there was another action pending against it which was filed by one of the original lessors of the leasehold for the sum of $5.000.00, which, according to the pleading, was attempted to be asserted as a lien upon the property.

But, eliminating entirely from the case the question of the indebtedness of defendant, or that of the plaintiff, the evidence is wholly insufficient under the rule, *supra*, to sustain the judgment appealed from. There is no evidence of defendant's insolvency or that he is committing or threatening to commit waste, or that he is impairing the value of plaintiff's security by bad operation or otherwise. The case, as it is presented in the record, is simply one of enforcing a vendor's lien and where the property is worth more than when the lien was created with good management shown on the part of the vendee, and no proof of his insolvency. Under such circumstances the fact that he has not paid all of his current debts, which he says do not amount to exceeding $350.00, and which is not contradicted by any competent proof in the case, furnishes no ground whatever for the appointment of a receiver. The fact that the defendant in the operation of the mine is daily taking away some of the coal is not evidence of waste, for that was the very purpose for which the property was sold by plaintiff and for which it was purchased by defendant. Besides, it is clearly shown by the testimony that the vein which defendant is operating is from thirty to forty inches thick and that it practically, if not entirely, covers the entire

leasehold of one hundred and seventy-five acres, only four or five acres of which had been removed since the original opening of the mine; and in addition there are other veins which may become available for mining purposes. As strongly supporting the insufficiency of the grounds relied on we refer to the testimony of plaintiff's manager, half owner and chief witness, John Hunley, who in the course of his examination was asked: "He (defendant) has sufficient property, then, in your judgment, to pay all of his debts? A. If he would pay them, probably he would."

It is argued, however, by plaintiff's counsel that unless a receiver is appointed the original lessors of the lease would forfeit it for the nonpayment of royalty and thereby destroy plaintiff's security, which right of forfeiture it is insisted was given by the original lease. Issue was made upon that contention and the burden was upon plaintiff to establish it. It introduced no proof upon the subject and defendant proved by affidavit and without objection that the original lease provided for no such right. The best evidence of that fact would be the lease but which was not introduced by either litigant, nor were either of the notes sued on, or the assignment of the property involved, filed as exhibits with the petition or introduced in evidence. However, such irregularities were waived and the case was practiced as though the original papers or proper copies thereof were filed.

In this case but a comparatively small amount of the coal could be removed before plaintiff could obtain judgment for its past due indebtedness and an order of court for sale of the property to satisfy the judgment. The debt was admitted and no doubt an order of sale could have been procured before this time, and during which the security for the debt would be diminished but an infinitesimal amount, if the operation by defendant was continued as proven.

Being of the opinion that the court erred in rendering the judgment appealed from, it is reversed with directions to set it aside and overrule the motion and direct the property to be turned over to the possession of defendant and for proceedings consistent with this opinion.