## Weisert, et al. v. Kraft, et al.

(Decided April 19, 1925.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

Corporations—Mincrity Stockholders Not Entitled to Dissolution Because Enterprise is Not Paying Dividends.—Though market conducted by corporation organized for that purpose was not profitable, where value of its property had advanced and there was no question of insolvency, minority stockholders held not entitled to dissolution and sale of property, in absence of fraud committed or threatened by majority stockholders and directors.

WM. F. CLARKE, JR., and ALLEN P. DODD for appellants.

W. A. PERRY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an action by certain minority stockholders of the Kentucky Market Company for the appointment of a receiver and the dissolution of the corporation. The relief was asked on the ground of gross mismanagement of the affairs of the corporation by its directors and the fraudulent misappropriation of its property for their personal profit. The further point is made that the evidence discloses that the purpose for which the corporation was organized had failed and that the action of the directors in continuing the corporation was *ultra vires* and illegal. The chancellor refused to grant the prayer of the petition, and the complaining stockholders have appealed.

A peculiar situation is presented. In 1874 a number of butchers and market men organized the company and acquired all of its stock, which consisted of 160 shares of the par value of $100.00 each. The purpose for which the company was organized is stated in the articles of incorporation as follows:

"The nature of the business is to establish a market house in Louisville, Kentucky, wherein

fresh meats and salt meats of all kinds are sold, and where game, poultry and the like are sold, and vegetables of all kinds,. fresh and canned, fruits of all kinds, fresh, dried and canned, and all such things of like character as are generally sold in market houses and offered for sale by market people, butchers and dealers and the like.''

The company acquired a lot at the southeast corner of Fifth and Liberty streets in Louisville, and erected thereon a market house consisting of a one-story building with brick walls and a floor space of 76 by 97 feet, which was cut into stalls which were rented principally to the stockholders themselves. Amended articles of incorporation were filed. in 1898 and again in 1908, when the life of the corporation was extended for a period of 25 years. The amount of the capital stock has not been changed. The ownership of the capital stock has been in the Kraft, Mitchell and Weisert families since the organization of the company, and the present owners are descendants of the original incorporators. The Kraft family has always been in control. The present stockholders, and the number of shares owned by each, are as follows:

Dora Weisert, fifteen shares;
Robert Mitchell Estate, thirty shares;
Lizzie A. K. Kraft, seven and one-half shares;
Theodore Kraft, seven and one-half shares;
H. C. Kraft, twenty-two and one-half shares;
E. A. Kraft, seventeen and one-half shares;
R. A. Kraft, twenty-two and one-half shares;
E. J. C. Kraft, thirty shares;
May Blatz, seven and one-half shares.

The Kraft family compose the board of directors and the principal portion of the building is occupied by them as tenants. However, the evidence shows that the rents paid by the Kraft family were greater than those paid by other tenants in the building, and more than those paid by other tenants in the immediate neighborhood. For several years the expenses have about equalled the revenues from the building and the total profit has amounted to only $288.00. The only salary is one of $100.00 paid the secretary and treasurer of the company, out of which he pays the salary of its bookkeeper, the other expenses consisting principally of taxes. The property is worth about $100,000.00, but the market house cannot be profitably conducted as the trade

is not there. While all the stockholders agree that the property should be sold and the proceeds divided, there is a difference of opinion as to when this should be done, the Krafts claiming that higher prices will be realized if the sale is postponed, while the complaining stockholders insist and have shown by some witnesses that prices in that vicinity have about reached their peak, and it would be best to sell the property now.

In support of their right to a dissolution of the corporation appellants insist that the majority stockholders, who are directors of the corporation and tenants of the building, occupy the dual position of lessors and lessees and can not be expected to protect the rights of the corporation; that the corporation was organized for the purpose of establishing a market house for the pecuniary gain of its stockholders, and that because of the changed conditions the business can no longer be operated at a profit with the result that the stockholders are deprived of their dividends, the purpose of the corporation cannot be attained and it is therefore engaged in a business other than that authorized by its charter. It appears that the original stockholders were all tenants of the building and that the same plan prevails today, with the exception of the minority stockholders, who are no longer in business. Notwithstanding this fact, if it had been made to appear that the majority stockholders were exercising their powers to the prejudice of the minority stockholders, a different question would be presented. However, the chancellor held that no fraud or mismanagement on the part of the directors and majority stockholders was shown, and a careful consideration of the evidence has convinced us that his conclusion is correct. The corporation is not insolvent, nor has its purpose failed. It still conducts its original business, and though without profit in the form of dividends, its property has materially advanced in value and there is not the slightest prospect of insolvency. The only issue between the parties is whether the building should be sold now or the business conducted for a while longer in the hope that the building will appreciate in value. This, it seems to us, is purely a question of policy and the court is not at liberty to substitute the judgment of the minority stockholders, or even its own judgment, for that of those intrusted with the control and management of the corporation. It is the rule in this state that the stockholders of a corporation impliedly agree that the

corporation's affairs shall, within the limits defined by its articles, be controlled by the board of directors, and that the corporation shall endure for the purpose for which it is organized for the entire period fixed by its articles unless sooner dissolved by operation of law, and the judgment of the board as to matters within the powers of the corporation, although unwisely exercised, is, in the absence of fraud committed or threatened against the corporation or the minority stockholders, entirely beyond the control of the stockholders through the intervention of the court, except in a case where the corporate enterprise is impossible of execution. Manufacturers' Land and Improvement Co. v. Cleary, &c., 121 Ky. 403, 89 S. W. 248. Not only so, but such impossibility of execution must be demonstrated to a certainty and is not to be determined merely by the weight of the evidence, and no such case is here presented. On the contrary, the corporation is a going concern and the remedy of the shareholders who disapprove of the company's management is to elect new officers, or to sell their shares and withdraw. They have no right to have the company dissolved. Noble v. Gadsden Land, etc., Co., 133 Ala. 255, 31 So. 856, 91 Am. St. Rep. 27.

Judgment affirmed.