## Reid Drug Co. et al. v. Salyer et al.

(Decided May 14, 1937.)

CRAFT. & STANFILL and BAILEY D. BERRY for appellants.
T. E. MOORE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

For about three years prior to November 15, 1935, S. C. Reid operated a drugstore in Hazard, Ky., in the trade-name of Reid Drug Company. He began with only about $100, and on the day specified the value of his stock and fixtures and other assets, consisting of bills receivable, etc., amounted to about $6,000, over and above his outstanding indebtedness; the latter amounting to about $3,000. On that day the appellants and plaintiffs below, Dr. K. N. Salyer and Dr. J. C. Coldiron, jointly purchased a one-half interest in the business by each of them agreeing to pay on the outstanding indebtedness of Reid the sum of $1,500 or a total sum of $3,000. The balance of his indebtedness, if any, he agreed to pay. Immediately following that purchase, which was evidenced by writing, the parties incorporated under the name of "Reid Drug Company, Incoporated," with a paid-up capital stock of $6,000; $1,500 of which was issued to each of the plaintiffs, and $1,500 to Reid, and the same amount to his wife. The stockholders elected themselves directors and made Reid the manager of the business with power to conduct and operate it as he had theretofore done—he being a graduated pharmacist.

Plaintiffs did not pay the entire amount that they had agreed to—one of them falling short thereof about $218 and the other about $180—but the amount they did pay was devoted to the extinguishment of Reid's indebtedness and there is no complaint that he did not take care of the balance. By agreement of the stockholders and directors, Reid was to be assisted in his management and operation of the store by his wife, and plaintiffs were given the power and authority to fix their compensation, which they did by agreeing to pay Reid $100 per month and his wife $40 per month, with power and authority in Reid to employ whatever help might be necessary to operate the store and the soda fountain installed and maintained in it. Just prior to the sale of the stock referred to, and the act of incorporation, Reid had ordered a lot of toys for the forthcoming Christmas holidays, which had not arrived at that time, but was received later and his indebtedness above did not include the amount of the bill for that merchandise. A considerable portion of it was not sold and was boxed

and stored away for the next holiday. Reid operated the store under that arrangement until the filing of this action in the Perry circuit court on April 21, 1936, by plaintiffs, against him and his wife—and later against the corporation, which was brought into the case by amendment. A short while before the action was filed, Salyer, who seems to have been the spokesman for himself and Coldiron, began to complain with Reid because, as he claimed, the business was not showing a profit and which he said Reid had promised it would do at the time he and Coldiron became interested in it. He complained at the salary received by Mrs. Reid, and the husband agreed to suspend the payment thereof and to dismiss her as an employee, which he did. Salyer, perhaps, also complained that the compensation of other employees was too much, although there were only two of them—one who received a salary of $11 per week and the other of $17.50. Reid, according to his testimony, put in all of his time since the incorporation from about 7 o'clock a. m. to 10:30 p. m. each of the seven days of all the weeks.

The petition alleged the facts to which we have referred and that the overhead expense, some of which we have stated, amounted to about $437 per month; that no dividends from profits had been realized or paid; and that a corporate indebtedness of about $3,100 had accumulated, but it was not alleged, nor did the proof even tend to show, that the net assets of the concern were less than when plaintiffs became interested therein, and when the corporation was formed. On the contrary, it is conclusively shown that the net value of the assets had increased. A part of the indebtedness existing at the time of the filing of the petition was partially due to the unlisted purchase price of the 1935 Xmas toys above referred to, and which the unsold surplus of that bill of merchandise added to the value of the stock as invoiced about the time plaintiffs acquired their interest. So that, as alleged in the petition, the stock of merchandise at the time of incorporation was of the value of $5,200, and the fixtures valued at $3,140, thus making the stock and fixtures worth $8,340. However, an invoice made on April 17, 1936, showed the stock to be worth at that time $5,196, with furniture and fixtures valued at $3,138.81, bills receivable $733.82 and cash on hand $210.35, making the total assets $9,279.54, from

which, deducting outstanding indebtedness, left a net valuation of assets of $5,982.93.

The action was filed in equity by plaintiffs against defendants for the purpose of having a receiver appointed and winding up and dissolving the corporation. No fraud in the management of the corporation was charged or attempted to be proven against Reid, the manager, but there was a general statement that the affairs of the corporation had been "mismanaged." It was not alleged that the corporation was insolvent and Salyer in his testimony admits that it was solvent. But plaintiffs and their counsel emphasize the fact that the alleged statement of Reid as having been made to plaintiffs at the time they purchased their interest that he would earn for each of them $100 per month in the way of profits (but which he denied) had not been complied with and that the overhead expense, including the salaries of Reid and wife (which were fixed and agreed to by plaintiffs alone), was too great, although before filing the action Reid had diminished that expense to the extent of $40 per month theretofore paid to Mrs. Reid. The proof also shows that the rental of the storeroom in which the business was operated was made exclusively by plaintiffs and that they agreed to a monthly rental of $160, which on its face appears somewhat extravagant for a business of that size and character. But whether that amount exceeded the amount for rent that Reid had been paying before the incorporation does not appear. However, what we have stated emphatically confirms the facts that $300 of the overhead expense (salaries of Reid and wife and store rent) were amounts agreed to and fixed by plaintiffs themselves. The balance of the total monthly overhead expense went to defray other necessary clerical hire, lights, telephone, and other necessary matters incident to the operation of the store.

In addition to the foregoing grounds for the appointment of a receiver, it was also alleged that the stockholders as well as the directorate of the corporation were deadlocked—meaning thereby that the stock was equally divided between two of the directors and stockholders, acting together, and the other two directors and stockholders doing likewise, with the stock equally divided; so that no change in the management of the corporate affairs could be made as long as that

situation existed. But the only issue developed by the testimony upon which there was a serious division was that plaintiffs were dissatisfied, or professed to be, and desired to get rid of the Reids; but neither side would agree to purchase the stock of the other. However, such a situation will not alone and in and of itself (see post) furnish grounds for the appointment of a receiver, or for dissolution of the corporation. The defensive pleadings put in issue the alleged grounds for the appointment of a receiver, although the court had appointed one in an ex parte order made at the time of the filing of the petition, but which order he set aside within a day or so, until the issues made by the answer could be heard, which was soon done. The court then appointed his son-in-law receiver, who took charge of the property and of course ousted Reid. He and his wife prosecute this appeal from that judgment.

Section 298 of our Civil Code of Practice is our legislative enactment with reference to the appointment of receivers. It states generally who may invoke the remedy and the circumstances under which it will be granted. But the principles underlying the duty of the court, and measuring its discretion in the matter, are largely governed by the principles of the common law on the subject, as is shown by the numerous domestic cases cited in the note to that section, and others hereinafter cited, some of which involve applications made by stockholders, while in others the application was made by creditors, lienholders, or others showing themselves entitled to the remedy under the section referred to.

In the case of Greasy Creek Coal & Land Company v. Greasy Creek Coal Company, 196 Ky. 67, 244 S. W. 85, 88, we pointed out that under that section, as well as under common-law equitable principles, a receiver would not be appointed except where the property was "in danger of being lost, or of being removed, or materially injured," and that: "Aside from this defined and restricted authority, it is the general rule that a receiver will not be appointed unless it appears that the appointment is necessary either to prevent fraud or to save the property from injury or threatened loss or destruction. 23 Ruling Case Law, 18. The fact that the appointment will do no harm will not of itself authorize such action by the court." The opinion referred to the

case of Elkhorn Hazard Coal Company v. Fairchild, 191 Ky. 276, 230 S. W. 61, 64, and approved a statement made in the opinion rendered in the case that: ''The appointment of a receiver is in the nature of a provisional remedy, but is the last of that sort of remedies to be resorted to.'' Other authorities sustaining the statement of the rule as therein contained are cited in the opinion.

To the same effect is the opinion in the case of Fleming, Trustee, v. Virginia Mining Co., in the same volume of reports, 196 Ky. 38, 244 S. W. 295. A like declaration of the same governing principle is found in the case of Producers' Coal Company v. Barnaby, 210 Ky. 244, 275 S. W., 625, and Jackson Lumber & Supply Co. v. Bach, 218 Ky. 19, 290 S. W. 1055. Others to the same effect are Venus Oil Corporation v. Gardner, 244 Ky. 176, 50 S. W. (2d) 537, 538, and Haldeman v. Haldeman, 176 Ky. 635, 197 S. W. 376, 378, in each of which we considered and determined the question of the right of stockholders to invoke any remedy interfering with the duly governing authorities and operators of their corporations. In those (last two) cases we held that no such interference would be approved—even by the appointment of a receiver, or an application for a dissolution—''unless its (corporation's) governing authorities have acted or are threatening to act fraudulently, in the broad sense, against them (stockholders) or have abused the implied trust resposed in officers and directors in such manner or to such extent as to warrant the interposition of equity.'' In support of that statement, taken from the Gardner Case, these domestic cases are cited: ''Huffaker v. Kreiger's Assignee, 107 Ky. 200, 53 S. W. 288, 21 Ky. Law Rep. 887, 46 L. R. A. 384; Manufacturers' Land & Improvement Co. v. Cleary, 121 Ky. 403, 89 S. W. 248, 28 Ky. Law Rep. 359; Poutch v. National Foundry & Machine Co., 147 Ky. 242, 143 S. W. 1003, 1004; Beha v. Martin, 161 Ky. 838, 171 S. W. 393; Haldeman v. Haldeman, 176 Ky. 635, 197 S. W. 376; Carter v. Louisville Railway Co., 238 Ky. 42, 36 S. W. (2d) 836.''

Another pertinent but earlier case (cited in some of the opinions referred to) is that of Rider v. John G. Delker & Sons Co., 145 Ky. 634, 140 S. W. 1011, 1013, 39 L. R. A. (N. S.) 1007, involving facts very similar to those found in this record and presenting the question

as to when stockholders may be entitled to throw the corporation into receivership, or to procure its dissolution. This court in that case, in denying the application for a receiver for a corporation made by one of its stockholders, said: ''Nor was he (plaintiff) entitled, under the prayer of his petition, to have the corporation placed in the hands of a receiver. The allegations on the part of a stockholder that a corporation is insolvent and that it is a losing venture are not sufficient to warrant a receivership, for, as said in Thompson on Corporations, vol. 5, sec. 6346, 'in the absence of statutory provisions to the contrary, the mere insolvency of a corporation is not sufficient in equity to authorize the appointment of a receiver, unless there is some evidence of waste, extravagance, carelessness, dissensions, or fraud which gives ground to apprehend that the property will suffer, and there is no reasonable prospect that if let alone the corporation will soon become safely solvent.' '' Further along the court in that case quoted with approval the text in 10 Cyc. 1305, relating to the same question, and which says: ''In the absence of enabling statutes, courts of chancery have no jurisdiction to decree the dissolution of a corporation; nor as a general rule can such a court, during the life of a corporation, wind up its business and sequestrate its property and effects, on the application of a shareholder as such.'' See also, to the same effect, the text in 14a. C. J. on pages 948 and 949, section 3165 and 3166, dealing exclusively with the right to appoint a receiver at the instance of a stockholder.

We have seen that no charge of fraud in the management of the affairs of the Reid Drug Company, Incorporated, is charged in the petition, although it is said that Reid had mismanaged them. But when we come to examine the testimony in the case, we find an entire absence of proof to sustain the charge, although it does show that the amount of profit expected to be realized from the operation of the business had not been forthcoming. As hereinbefore pointed out, no net loss had been incurred and overhead expenses had been largely increased with the knowledge and consent of plaintiffs, the larger part of which they themselves had fixed. Of course when Reid was operating the drug company alone as an individual, he paid neither himself nor his wife and, as we have intimated, he may have paid less

rent than the contracted amount to be paid by plaintiffs after the incorporation of the business. We, therefore, see that under the governing rules as laid down by the cases and authorities supra, no showing has been made for the granting of the only relief sought by the petition, unless the fact that the stockholders and directors are deadlocked, in that two of them are arrayed on one side (Reid and wife) and the other two (plaintiffs) on the other side as is charged in the petition, is itself sufficient. But when we come to examine the testimony it is developed that practically the only objection to the management of the corporation urged by plaintiffs was the failure to earn sufficient profits to justify the payment of dividends; but which situation may or may not continue—the defendant Reid stating positively that he is confident he will be able to realize profits if unmolested and permitted to continue the operation of the business. In other words, he anticipates a growth of the business of the corporation and a complete recovery of any diminishment thereof incident possibly to a change of ownership; there being but about five months operating period from the time of the incorporation until the filing of this action.

The deadlocked condition of the stockholders and directors as above described is not of itself, standing alone, sufficient ground for the appointmnet of a receiver on an application by a stockholder, as is clearly pointed out in section 7713 of the text in Fletcher's Encyclopedia of Corporations (1933 Ed.) vol. 16, wherein this language is recorded: "In regard to a deadlock among stockholders, each faction owning half the stock it has been held however, that the court 'should not interfere by a receiver for the purposes of preservation even, unless there is a present danger to the interests of the stockholders, consisting of a serious suspension of or interference with the conduct of the business, and a threatened depreciation of the value of the assets consequent thereon, which may be met and remedied by a receiver. In other words, it must appear in this, as in all other cases, that the appointment of a receiver will serve some beneficial purpose to the stockholders.' "

Among the numerous cases cited in notes 65 and 66 to that text is McGuire v. Kaysen-McGuire Co., 184 Minn. 553, 239 N. W. 616, 618. In that opinion the excerpt from the text supra, as contained in the first edi-

tion of that work, volume 8, section 5245, is quoted with approval. The court also in that (McGuire) opinion in stating the general rule, even where such locking of stockholders and directors undoubtedly existed, said: ''The appointment of a receiver for a solvent going business corporation is a drastic measure to be taken only when there is imminent danger of loss to the stockholders and there is no remedy at law.'' The entire opinion in that case is illuminating, and it completely supports the general rule that such drastic measures, as applied to a solvent corporation, will not be approved, except in extremely rare cases of fraud and mismanagement—neither of which apears in this case. We deem it unnecessary to further elaborate the questions, since the cases and authorities referred to are sufficient to show that the appointment of the receiver in this case was unauthorized and the court erred in sustaining plaintiffs' motion therefor.

Since the filing of the record in this court, counsel for plaintiffs (and appellees) has entered a motion to dismiss the appeal on the ground that the quesitons are moot, which—as he manifests in his motion—became so (as he contends) because since the appointment of the receiver, and since the prosecution of this appeal, the court ordered the receiver to sell the stock of merchandize and fixtures beolnging to the corporation, which the receiver has done. That motion was passed by us to a hearing upon the merits and which will have to be and is hereby overruled, since the rights of appellants may not be terminated by the perpetration of a second error—following a previous one committed by the trial court against them, in appointing a receiver—whereby they were wrongfully deprived of their rights in the corporation. We have found that the court erroneously appointed a receiver and he may not correct that error by committing another one in ordering the receiver to sell the property so erroneously put in his charge.

Wherefore, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.