The appellant and the appellees John H. Atkin and B. T. Redstone were the incorporators of the Redstone Lumber Supply Company and for some years prior to the institution of this suit were the owners of all the stock of said corporation. For about ten years immediately preceding the filing of the bill, the appellant took no active part in the management of the business, though he was a member of the board of directors, and until January, 1924, he drew a salary as vice-president. The appellees B. T. Redstone and J. H. Atkin were president and secretary respectively, as well as members of the board of directors, and they were also paid salaries which grew larger from time to time. The minutes of the meetings of the stockholders and of the board of directors as shown by the records, are scant and throw but little light on what transpired at such meetings. According to such minutes, the directors usually had one meeting each year and no meetings of either stockholders or directors are shown to have been held during the years 1925, 1926 and 1927. At only two of the directors meetings were salaries of the officers fixed. After March 19, 1917, no reference is made in the minutes to salaries until the year 1924, when in the absence of appellant, it was determined *Page 228 
to discontinue his salary. If any action was taken at the meeting in 1924, relative to the salaries of the president and secretary, it is not shown in the record.
Notwithstanding the fact the whole time the appellant was a director, it appears that for about ten years before instituting this suit, he took but little, if any, interest in the affairs of the corporation and was but infrequently at its place of business. During this period of time, the business was operated successfully by his son B. T. Redstone and J. H. Atkin. Dividends, which at times at least, reflected splendid management were paid every year until the year 1928. The appellant attended the stockholders' meeting in March, 1928, at which time all of the stockholders were reelected as directors of the corporation. At the director's meeting in March, 1928, appellant offered a resolution, one of the purposes of which was to fix the salaries of B. T. Redstone and J. H. Atkin at $200.00 each per month. At that time they were, and for six years they had been, drawing salaries of $500.00 and $400.00 respectively per month. This resolution was rejected by the votes of B. T. Redstone and J. H. Atkin, whereupon the appellant after an examination made by him of the books and records of the corporation filed his bill herein, and prayed for the cancellation of stock certificates alleged to have been issued without authority to Atkin for 44 shares of the capital stock of the company and that Atkin be decreed to refund to the company the dividends thereon; that the court decree the salaries of B. T. Redstone and J. H. Atkin to be in excess of what their services were reasonably worth and that the court find and decree what would be a fair and reasonable compensation to them for their services and that on an accounting they be requested (required) to return the *Page 229 
amount found to have been drawn by them as salaries in excess of a reasonable amount. Upon the coming in of answers and replication, testimony was taken before the circuit judge who later dismissed complainant's bill.
Appellant contends here that the sale of the said 44 shares of capital stock to J. H. Atkin was never authorized. On the other hand the other two stockholders contend and so testify that such sale was authorized in 1921 or 1922, upon the suggestion of the appellant, though no minute was made of it. They all agree that no price was fixed for such stock. It is not made to appear that any further discussion in which appellant participated was had relative to the 44 shares of stock, but on December 31, 1924, the president and secretary issued to Atkin, a certificate number 53 for 20 shares and on May 23, 1925, they also issued to that person a certificate number 54 for the remaining 24 shares, all of which shares were paid for at par value.
For the year 1925, a dividend was declared that took care of the then profits and accumulated surplus, but the shares represented by certificate number 53 did not participate in this dividend. A dividend of 79% was declared on all stock for the year 1925, and Atkin received the full dividend on the shares represented by certificate number 54.
The courts generally hold that acquiescence, laches or estoppel is a bar to relief against stock irregularly issued without consideration or for an insufficient consideration, except when such stock is made absolutely void by statute. 1 Cook on Corporations (6th Ed.) Sec. 39; 5 Fletcher, Cyclopedia of Corporations, Sec. 3586; 14 C. J. 447.
A court of equity will not grant relief to a minority stockholder or a minority director who for years acquiesced *Page 230 
in the salaries fixed. 1 Morawetz on Private Corporations (2d Ed.) Sec. 262; Brown v. De Young, 167 Ill. 549, 47 N.E. 863; 14a C. J. 145.
Directors' meetings irregularly convened or conducted may be cured by acquiescence or subsequent ratification. Helliwel, Stock Stockholders, 452; 3 Fletcher, Cyclopedia of Corporations, Sec. 1893.
Failure of the board of directors of a corporation to record their action will not affect the validity of the acts done by them. 2 Thompson on Corporations (3d Ed.) 713 and 656; Stamford Bank v. Benedict, 15 Conn. 437; Oakford v. Fischer, 75 Ill. App. 544. See also Merchants etc. Bank v. Harris Lbr. Co.,103 Ark. 283, 146 S.W. 508, Ann. Cas. 1914B, 713; Poutch v. National. Foundry and Mach. Co., 147 Ky. 242, 143 S.W. 1003; Edgerly v. Emerson, 23 N.H. 555, 55 Am. Dec. 207; 14a C. J. 93.
If no minutes are kept, or if the record is incomplete, action at a meeting of the directors may be proved by parol evidence. 2 Thompson on Corporations (3d Ed.) 656; Ten Eyck v. Pontiac etc. R. Co., 74 Mich. 226, 41 N.W. 905, 16 Am. St. Rep. 633, 3 L. R. A. 378; State v. Guertin, 106 Minn. 248, 119 N.W. 43, 130 Am. St. Rep. 610; Starwich v. Washington Cut Glass Co.,64 Wn. 42, 116 P. 459; Ann. Cas. 1913A 262; 14 a C. J. 93.
The directors of a corporation are chargeable with knowledge of such corporate affairs as it is their duty to keep informed of and of the facts which the corporate books and records disclose. Halsell v. Muskogee First Nat. Bank, 48 Okla. 535,150 P. 489, L. R. A. 1916B 697; Brown v. Finn, 34 Fed. 124; 14a C. J. 100; 21 A. E. Ency. Law (2d Ed.) Section 896.
Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual *Page 231 
knowledge. Lowndes v. City Nat. Bank, 82 Conn. 8, 72 A. 150, 22 L. R. A. (N.S.) 408, 412; Martin v. Webb, 110 U.S. 7, 15, 28 L.Ed. 49, 52, 3 S.Ct. 428.
The transcript does not show that the appellant attempted to prove, nor does he contend, that the books and records of the corporation were not properly kept. There is no showing to the effect that he could not have, at any time by a mere inspection of the books and records of the corporation, ascertained the fact that the said 44 shares of the stock have been issued to Atkin, the amount paid therefor and the dividends paid thereon, and also the amounts that had been paid to B. T. Redstone and J. H. Atkin as salaries. The means of knowledge with the duty of using them are in equity the equivalent of knowledge. If the meetings of the directors were informal and proper minutes were not kept, the appellant was in part responsible for it. He should not have permitted the large annual dividends declared by his associates to lull him to sleep. If, by his negligent ignorance, he permitted his associates to issue unissued or treasury stock at a price fixed by them and to fix their own salaries for a period of years prior to the meeting in February, 1928, he cannot now in the absence of fraud or bad faith on their part, successfully appeal to a court of equity to undo what was done by them in that respect.
Relative to the salaries paid subsequent to the meeting of the directors in February, 1928, a rejection of the resolution offered by appellant to fix the salaries of the president and secretary at $200.00 per month each and the failure of the board of directors to fix such salaries for the ensuing year was tantamount to B. T. Redstone and J. H. Atkin fixing their own salaries at $500.00 and $400.00 per month respectively, since they were already drawing such *Page 232 
amounts. See 14a C. J. 146; 4 Fletcher, Cyclopedia of Corporations, Sec. 2758.
We recognize as sound the principle that directors of a corporation are precluded from fixing their own compensation for services, to be rendered by them as officers of the corporation, unless they are expressly authorized to do so by the charter or by the stockholders. 14a C. J. 1434. No such authority is shown here. Under the issues made by the pleadings the court received testimony as to the reasonableness of the salaries for services rendered by the president and secretary. It appears that the president voluntarily reduced his salary and since January 1, 1928 has received $200.00 per month, and the only testimony on the point before the court tended to show that the salaries paid were not unreasonable. In dismissing the bill, the court evidently concluded that the salaries were being earned and that no advantage was being taken of the appellant.
Without passing upon the legality of the action of the majority directors in issuing the 44 shares of stock complained of to J. H. Atkin, we hold that the appellant, if he did not actually know, was charged with knowledge of the transaction; that by his conduct he acquiesced therein until 1928, and estopped himself from seeking a cancellation of the certificates evidencing Atkin's ownership of such stock.
The presumption being in favor of the correctness of the decree of the lower court and we being of the opinion that this presumption has not been overcome in this case, the decree is affirmed.