212 So.2d 806 (1968)
Francis J. COLEMAN and Rita K. Coleman, Appellants,
v.
PLANTATION GOLF CLUB, INC., George W. Robertson and Berniece K. Robertson, and George W. Tedder, Jr., and Susan H. Tedder, Appellees.
No. 1185.
District Court of Appeal of Florida. Fourth District.
July 23, 1968.
Robert C. Abel, Jr. (of Saunders, Curtis, Ginestra & Gore), Fort Lauderdale, for appellants.
E.L. McMorrough, Hollywood, for appellees-Plantation Golf Club, Inc., and Robertson.
Martin F. Avery, Jr. (of Berryhill, Avery & Law), Fort Lauderdale, for appellees-Tedder.
PATTEN, GEORGE L., Associate Judge.
This is a timely appeal by plaintiffs, Francis J. and Rita K. Coleman, hereinafter referred to as appellants, from an adverse decree in a stockholders' derivative action brought against the individual *807 defendants and the Plantation Golf Club, Inc. This final decree of the lower court also found against the plaintiffs in their claim on a promissory note or alternatively, an open account.
Briefly, the facts of the case are as follows: the Plantation Golf Club Inc., hereinafter referred to as the Corporation, was incorporated in 1953 and was authorized to issue 1,500 shares of no par value stock. The amount of capital was authorized at $45,000.00. At the time of incorporation, a golf course was purchased. The record indicates that a down payment of $125,000.00 was made by the Corporation for the golf course. The Corporation issued a promissory note to the stockholders for the difference between the amount paid out of the Corporation capital and amount of down payment. The record reveals a dispute between parties to this action as to whether the amount of the note was $95,000.00 or $80,000.00.
In 1957 the appellants purchased 400 shares of stock in the Corporation. At that time Appellees-George W. Robertson and Berniece K. Robertson owned 500 shares, Appellees-George W. Tedder, Jr., and Susan H. Tedder owned 500 shares and 50 shares each were owned by a Mr. Simms and a Mr. Lynch.
Prior to the appellants becoming stockholders the Robertsons and the Tedders had been on the payroll of the Corporation as officers. The Robertsons and the Tedders continued on the payroll as officers until 1961 when the Appellant-Francis Coleman was elected to the board of directors and also placed on the payroll as a second vice president. During the same year the appellants and appellees executed an agreement whereby the appellants released the appellees from any claim for appellees' actions involving the management of the Corporation prior to that date.
Appellant-Francis J. Coleman continued on the board of directors until 1966 when he was succeeded by Appellant-Rita J. Coleman. During this time he received certain sums of money, free golf privileges and free food at the club.
Also on two occasions, one after the Colemans became stockholders, the Corporation's books and records were audited by the Internal Revenue Service. As a result of these audits, the salaries of the Appellant-Francis Coleman and Appellees-Robertsons and Tedders were disallowed and subsequently adjusted to come within guidelines laid down by the Internal Revenue Service. The adjusted salaries were subsequently approved at a board meeting by Francis J. Coleman, the Robertsons and the Tedders.
The appellants became dissatisfied with the salaries being paid and this action resulted.
The record on appeal is voluminous and there are numerous assignments of error; however, the controversy condenses down to three basic questions on the part of the appellant. The first being  Can the directors vote for and pay themselves salaries? Secondly,  If they can vote for and pay themselves salaries, who should bear the burden of proof as to the reasonableness of such salary? And thirdly  Should the amount due on the promissory note, or open account, become now due and payable?
The Florida Supreme Court has recognized the principle that directors of a corporation are precluded from fixing their own compensation for services, to be rendered by them as officers of the corporation, unless they are expressly authorized to do so by the charter or by the stockholders. Redstone v. Redstone Lumber & Supply Co., 1931, 101 Fla. 226, 133 So. 882. In this case, however, the Court went on to say that:
"A court of equity will not grant relief to a minority stockholder or a minority director who for years acquiesced in the salaries fixed. * * *"
*808 In the instant case the able trial judge after hearing the testimony of the witnesses, examining the evidence and hearing argument of counsel found that the appellees had acted within the provisions of the charter of the Corporation in voting for and paying themselves salaries as officers and that the appellants had acquiesced in this action.
The question of reasonableness of the salaries was discussed by the Second District Court of Appeal of Florida in the case of Sarasota Tile & Terrazzo Corporation v. De Soto Terrazzo Corporation, Fla.App. 1958, 105 So.2d 811, wherein it was stated:
"Where the issue of the reasonableness or unreasonableness, or legality or illegality of a compensation increase is presented, the court of equity has power to determine this issue. * * *"
Also, in regard to the amount of salary set by the directors for the officers, the court in this same case said,
"`* * * the order of the board was not void, but was voidable at the suit of the minority stockholders on a cogent showing by them that the salary fixed, under circumstances such as above set out, was clearly excessive and wasteful as against the minority. * * *'" (Emphasis added.)
We feel, and so hold, that this principle would also apply to the initial setting of salary for an officer. This, of course, is a factual question decided in favor of appellee by the trial court.
"`In equity, as well as at law, every presumption is in favor of the correctness of the ruilings [sic] of the trial judge, and a final decree rendered by him, based largely or solely upon questions of fact, will not be reversed, unless the evidence clearly shows it to be erroneous.'" Sandlin v. Hunter Company, 1915, 70 Fla. 514, 70 So. 553.
There was ample evidence to support the findings of the trial judge.
The third question as to whether the amount due on the so-called promissory note or, in the alternative, the open account should now become due and payable was ably answered by the trial judge in the final decree. "No evidence or testimony was introduced to prove the promissory note sued on by the Plaintiffs. There is conflicting evidence as to the amount due on open accounts, the Court having received in evidence the original journal entries of the corporation in 1953 indicating debts due stockholders of $95,000.00. Some testimony sets the amount in 1957 (the time when Plaintiffs became stockholders) at $80,000.00. There is no evidence or testimony as to how the money was to be repaid or as to when it was to be repaid." Our review of the record has given us no reason to disagree with this finding of the trial judge.
Corporations must be allowed to function under majority control, so long as the majority does no actual wrong to the minority or to others. Courts are not to be called on to operate or control them, except in cases wherein such interference is essential to justice.
The presumption being in favor of the correctness of the decree of the lower court and we being of the opinion that this presumption has not been overcome, the judgment is, therefore, affirmed.
Affirmed.
CROSS and McCAIN, JJ., concur.