DAMOORGIAN, J.
 

 Lake Charleston Maintenance Association, Inc. (the Association) appeals the trial court’s order granting Colleen Farrell’s motion for an involuntary dismissal in a non-jury trial. We reverse, holding that the Association submitted sufficient evidence to make a prima facie case thus precluding the trial court from granting an involuntary dismissal under Florida Rule of Civil Procedure 1.420(b).
 

 A recitation of the evidence adduced during the Association’s case is necessary. Farrell is a homeowner in the homeowner’s association known as Lake Charleston. Lake Charleston consists of approximately 2,366 single-family homes. The Association operates and represents Lake Charleston, as well as twenty-seven other sub-associations in the Lake Charleston community.
 

 
 *183
 
 The community is subject to and governed by its governing documents, which section 720.301(8), Florida Statutes (2006), defines as: (a) the recorded Declaration of Covenants (the Declaration), and (b) the Articles of Incorporation and Bylaws of the Association. The Declaration provides for the creation of the Development Review Board (DRB), charged with approving architectural improvements or changes in the subdivision. Section 2, Article X of the Declaration provides, in pertinent part:
 

 no building, fence, wall, or other structure or improvement ... shall be commenced, altered, removed,
 
 painted,
 
 erected or maintained in the The Properties, nor shall any addition, removal, change or alteration (including
 
 paint
 
 or exterior finishing) visible from the exterior of any Unit be made ... until the plans and specifications showing the nature, kind, shape, height, materials and location of the same shall have been submitted to, and approved in writing by, the DRB.... The DRB shall approve proposals or plans and specifications submitted for its approval only if it deems that the construction, alteration, removal or addition contemplated thereby in the loeation(s) indicated will not be detrimental to the appearance of Lake Charleston as a whole, and that the appearance of any structure affected thereby will be in harmony with the surrounding structures and is otherwise desirable.... Until receipt by the DRB of any required plans and specifications, the DRB may postpone review of any plans submitted for approval. Upon such receipt, the DRB shall have thirty (30) days in which to accept or reject any proposed plans and if the DRB does not reject same within such period, said plans shall be deemed approved. The DRB herein shall be the ultimate deciding body and its decisions shall take precedence over all others.
 

 (emphasis added). Section 1, Article VII, provides that “[ejach owner shall
 
 repaint,
 
 restain, or refinish, as appropriate, the exterior portions of his Unit or Building (with the same colors and materials as initially used or approved by Developer and/or the DRB).” (emphasis added). Article XIII, Section 8 provides that when the Board’s approval is required, the Board may, in its sole and absolute discretion, withhold such approval.
 

 The Declaration also mandates the composition of the DRB. It states in pertinent part:
 

 The DRB shall initially consist of three (3) members. The initial members of the DRB shall consist of persons designated by the Developer.... Thereafter, each new member of the DRB shall be appointed by the Board of Directors of the Association and shall hold office until such time as he has resigned or has been removed or his successor has been appointed....
 

 Prior to January, 2005, the Board of Directors (the Board) had to serve as the DRB. When new members joined the Board the following month, it decided to form a separate DRB. During a meeting, the Board appointed three individuals— Wayne Grattan, Don Miller, and Paul Sie-gel — to serve on the DRB. The appointment of these individuals was discussed at the meeting, and a motion was made and seconded. Through a unanimous vote, the Board appointed them to the DRB. These actions are reflected in the minutes from the meeting. The regulations also provide that the vote of any two members of the DRB shall constitute an act of the DRB.
 

 On May 26, 2005, Farrell submitted an application to the DRB requesting permission to repaint her house in “Sage Green/Halcyon Green.” DRB members, Aida Ricetti and Jeanne Kelley, reviewed
 
 *184
 
 and denied the application on June 1, 2005.
 
 [1]
 
 Nothing was sent to Farrell informing her that her application was denied. Instead, she received a letter dated June 3, 2005, stating that her application was “pending.” The letter also requested that she provide a “[pjicture of the house” and “color swatches for the body and trim (no greens).”
 

 A short while later, Farrell observed signs noticing that the DRB was going to hold a meeting on June 8, 2005. Farrell decided to attend the meeting. At that meeting, Farrell was shown the application that she submitted earlier marked denied. The DRB informed her that they were not going to take any additional action on the application. She then took back her original application and “left very angry.” A couple of weeks later, she painted her house in the color she originally submitted in her application.
 

 Approximately six months after she painted her house, she received a letter from the Association’s attorney instructing her to resubmit her application in a DRB approved color. When she failed to do so, the attorney sent her a demand to compel mediation pursuant to section 720.311, Florida Statutes. Farrell failed to participate in the mediation, and the Association filed this suit. The Association alleged that Farrell painted her house without first obtaining the DRB’s written approval. Farrell argued the affirmative defenses of waiver and estoppel. The case proceeded to a non-jury trial. At the conclusion of the Association’s case, Farrell moved for an involuntary dismissal, arguing, in part, that there was no evidence that a properly comprised DRB took action on the application within the thirty-day period. The Association responded that the proper composure of the DRB was an affirmative defense and alternatively, there was evidence establishing the DRB was properly composed. Following argument on the motion, the trial court granted the motion, stating that the Association failed to present a prima facie case.
 

 On appeal, the Association contends that the trial court erred in granting the motion for involuntary dismissal because Farrell never obtained written approval to repaint her house in the proposed color. The Association further contends that it was not required to prove, as part of its prima facie case, that the DRB was properly constituted or that Farrell’s paint colors were inconsistent with the community’s scheme. But even if it was, the Association contends that there was evidence that the DRB was properly composed and that the colors were inconsistent with the community’s scheme. Alternatively, the Association argues that the evidence established that Farrell withdrew her application, thus preventing the Association from taking action on it within the thirty-day period. Finding that Farrell was required to prove that the DRB was properly constituted, we write to address whether the Association set forth a prima facie case that Farrell painted her house in violation of the restrictive covenants.
 

 “After a party seeking affirmative relief in an
 
 action tried by the court without a jury
 
 has completed the presentation of evidence, any other party may move for a dismissal on the ground that on the facts and the law the party seeking affirmative relief has shown no right to relief....” Fla. R. Civ. P. 1.420(b) (emphasis added);
 
 see Tillman v. Baskin,
 
 242 So.2d 748, 748 n. 1 (Fla. 4th DCA 1971),
 
 rev’d in part on other grounds,
 
 260 So.2d 509-10 (Fla.1972) (noting that a court may,
 
 *185
 
 in a non-jury trial, enter judgment for the defendant if it finds that the “plaintiffs case is insufficient to merit judgment”). “The court as trier of the facts may then determine them and render judgment against the party seeking affirmative relief or may decline to render judgment until the close of all the evidence.” Fla. R. Civ. P. 1.420(b). “[I]f the trial judge sitting without a jury concludes that upon the facts and the applicable law the plaintiff has shown no right to relief, then his order dismissing the plaintiffs cause should be affirmed unless clearly erroneous.”
 
 Lorber v. Aetna Life Ins. Co.,
 
 207 So.2d 305, 308 (Fla. 3d DCA 1968). But where the plaintiff “presented a prima facie case based on unimpeached evidence ... the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof.”
 
 Tillman,
 
 260 So.2d at 511 (citing
 
 Rogge v. Weaver,
 
 368 P.2d 810, 813 (Alaska 1962)).
 
 [2]
 

 At the close of the Association’s case, the unimpeached evidence established that Farrell painted her house in violation of the restrictive covenants. The evidence established that Farrell applied for approval to paint her house certain shades of green, and within the thirty-day period, two DRB committee members denied her application. She was informed of this decision when she attended the June 8 DRB meeting. After the DRB informed Farrell that it was not going to change its decision, she took her application and “left very angry.” Farrell then painted her house in the colors submitted in her application. Because the unimpeached evidence established a prima facie case that Farrell painted her house without DRB approval, the trial court improperly granted an involuntary dismissal at the close of the Association’s case.
 

 We find no merit to Farrell’s contention that because there was nothing in the minutes to indicate that Ricetti and Kelley were appointed by the Board to the DRB, the Association failed to set forth a prima facie case that the DRB was properly constituted. The mere fact that the official meeting minutes do not contain the approval of Ricetti and Kelley does not prove that the Board did not appoint them to the DRB.
 
 See Wimbledon Townhouse Condo. I, Ass’n v. Wolfson,
 
 510 So.2d 1106, 1108-09 (Fla. 4th DCA 1987) (quoting
 
 Redstone v. Redstone Lumber & Supply Co.,
 
 101 Fla. 226, 133 So. 882, 883 (1931)) (“Failure of the board of directors of a corporation to record their actions will not affect the validity of the acts done by them.”). Actions taken at the meeting may be proved by parol evidence if minutes are not kept or are incomplete.
 
 Redstone,
 
 133 So. at 884. Here, the June 1 DRB meeting minutes list Ricetti and Kelley as new DRB members, and Grattan testified that the Board indemnified them to be on the DRB. Therefore, there was evidence from which the fact finder could find that the DRB was regularly constituted. Because we find that there was evidence showing that the DRB was properly constituted, we need not address whether Farrell withdrew her application at the June 8 DRB meeting.
 

 Accordingly, we reverse and remand this case for further proceedings consistent with our decision. In the interests of judicial economy, we suggest that because this is a non-jury trial, the trial may commence from the point at which the dismiss
 
 *186
 
 al was granted, if the same trial judge is available to hear it.
 

 Reversed.
 

 WARNER and STEVENSON, JJ., concur.
 

 [1]
 

 . Although it is unclear from the June 1 meeting minutes whether Ricetti and Kelley were properly appointed to the DRB, they are listed as new DRB members in the minutes.
 

 [2]
 

 . While it would seem far more efficient for the trial judge to go ahead and rule on the plaintiff’s case, as is allowed in the federal courts, we do not have the option of rejecting the supreme court’s direct holding.